533 So.2d 413 (1988)
Betty Lu CALDWELL
v.
Melvin Douglas CALDWELL.
No. 58968.
Supreme Court of Mississippi.
October 5, 1988.
Rehearing Denied November 30, 1988.
Bobby Joe Randall, Gulfport, for appellant.
Gerard F. Smith, Dale Robinson, Gulfport, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and ROBERTSON, JJ.

ON PETITION FOR REHEARING TO EXPEDITE APPEAL
PRATHER, Justice, for the Court:
This appeal addresses the sufficiency of a diligent search and inquiry under Mississippi's summons by publication rule, Miss. Rules of Civil Procedure 4(c)(4)(A). This Court determines that the publication notice was insufficient because of inadequate search and inquiry to support an unknown address affidavit.
Betty Lu Caldwell (Hall), appearing specially to contest the Mississippi court's jurisdiction, filed a motion in the Chancery Court of Harrison County seeking to set aside a modification decree changing custody of children from her to her ex-husband, Melvin Douglas Caldwell. The Harrison County Chancery Court held that there had been a diligent search and inquiry for Mrs. Hall without success and that the process by publication was sufficient. From this adverse ruling, Mrs. Hall appeals to this Court.
Although the appellant's brief addresses several assignments of error, this Court addresses only one issue necessary for resolution of this appeal, which is whether diligent search and inquiry had preceded the appellee's affidavit for summons process by publication.

I.
Betty Lu Caldwell (Hall) and Melvin Douglas Caldwell have two children, Dawn and Tanya, from their marriage. An interlocutory decree of divorce was granted in December, 1975 in California, which divorce became final six months later, and which decree granted Mrs. Hall custody of the children. Around February 18, 1986, while residing in Norwich, Connecticut, Mrs. Hall had financial difficulties, and testified that she was receiving no child support from her ex-husband. Nor would her ex-husband's family tell her of his whereabouts. She telephoned her ex-mother-in-law, Mrs. Imogene Caldwell Curry, in Shepard, *414 Texas and asked if the children could visit with her on the farm while Mrs. Hall made an adjustment, to which request Mrs. Curry readily agreed. Within the hour, Mrs. Curry telephoned the appellant and stated that the children's airplane tickets had been purchased for the next day.
The children arrived and were met by their father at the airport. Without telling Mrs. Hall, the grandmother asked the children if they wanted to go visit with their father in Mississippi; they responded affirmatively and did so. This move was without Mrs. Hall's knowledge or consent. Mrs. Hall then moved to Anchorage, Alaska. The two children were enrolled in school in Biloxi, Mississippi by their father, who was stationed at Keesler Air Force Base.
Around March 21, 1986, Mrs. Hall located the whereabouts of her children from a sister-in-law and telephoned them. The girls assured their mother that they were well and asked her permission to stay; Mrs. Hall consented to their staying until Christmas.
During the mid or late part of August, 1986, Mrs. Hall testified she received a telephone call from her ex-husband's attorney, Gerald Smith. Smith asked if she would sign temporary papers to enable Mr. Caldwell to get medical help for the children if such became necessary. Mr. Caldwell was "sponsor of the children in the military" and could already secure medical services for the children. Mrs. Hall asked if any legal proceedings were being instituted in Mississippi for change of child custody to the father. Smith advised Mrs. Hall that such proceedings were being sought by Mr. Caldwell. She gave to Gerald Smith her full address and telephone number at her mother's residence of 1280 East 17th, Apartment 307, Anchorage, Alaska. No legal papers were ever received by Mrs. Hall. Numerous phone calls were made by Mrs. Hall to her children as well as to the two attorneys in Gulfport, Mississippi, one representing her and one representing her ex-husband. Verification of the placing of these telephone calls was exhibited to the court.
A motion to modify custody was filed on May 19, 1986 in Harrison County Chancery Court alleging Mrs. "Caldwell's" address to be "7709 East 4th Street, Anchorage, Alaska 99504." A temporary custody decree was entered on May 23, 1986, before process by publication was completed. Attorney Smith verified having had a telephone conversation with Mrs. Hall, but the date of which was uncertain. He did state he wrote to "Mrs. Betty Lu Caldwell" at "7709 East 4th Street, Anchorage, Alaska 99504" in May, 1986. That letter, exhibited to the court, was not delivered, nor refused.
Having learned of a second address, Smith mailed another letter to Mrs. Betty Lu Caldwell at "1280 East 17th Street, Anchorage, Alaska 99501," on August 22, 1986. This certified letter also was returned to Smith undelivered, but not refused. It is noted that the address failed to state "Apartment 307" in the address. No further search for Mrs. Hall was made.
After return of the second letter, attorney Smith then filed an amended motion for child custody modification on October 15, 1986, alleging that Mrs. Betty Lu Caldwell (Hall) was a "non-resident citizen of the State of Mississippi, whose address [was] unknown after diligent search and inquiry... ." Mr. Caldwell signed an affidavit to the motion upon his oath that the "things and facts alleged [t]herein [were] true and correct as stated [t]herein to the best of the plaintiff's knowledge." Upon this affidavit the summons by publication for Mrs. "Betty Lu Caldwell (Safford)" was issued by clerk of the county. After the publication for the required time, the court entered an order on December 23, 1986 modifying the child custody award entered by the California decree and granted the father custody.
Mrs. Hall exhibited to the Court her telephone statements verifying that telephone calls were made on a regular basis from her place of residence in Alaska to her ex-husband's residence and to her ex-husband's attorney. Although the quality of these exhibits in this appeal record is extremely poor, the exhibit does sufficiently *415 show communication by Mrs. Hall to these parties on a regular basis between May to December, 1986. Mrs. Hall also exhibited a letter from her daughter received by her at the second stated above Alaska address on May 9, 1986.
Mrs. Hall additionally telephoned the trial judge who advised her to employ an attorney. Either the judge or court clerk mailed to Mrs. Hall the December 23, 1986 decree.
Employing her own attorney, Mrs. Hall filed the present contested motion to set aside the December decree, appearing specially to contest the court's jurisdiction under the Uniform Child Custody Jurisdiction Act and the Parental Kidnapping Prevention Act and other grounds and together with a motion for citation for contempt against Mr. Caldwell for arrearage of child support payments of $19,800.00. To this new pleading of Mrs. Hall, Mr. Caldwell filed a general denial and a counterclaim for modification of the California decree of December 16, 1975.
On December 28, 1987, the trial court heard the jurisdictional challenge to the entry of the December, 1986 decree, and found that the court had jurisdiction of the parties and subject matter at the time of entry of that December 1986 decree and continued the force and effect of the order of modification of custody. Mrs. Hall disputes this finding and seeks review by this Court.

II.

DID THE RECORD UPHOLD THE CHANCELLOR'S FINDING THAT THE PLAINTIFF'S PROOF OF DILIGENT SEARCH AND INQUIRY WAS SUFFICIENT TO SUPPORT SUMMONS BY PUBLICATION?
Mississippi Rules of Civil Procedure 4(c)(4)(A) provides:
If the defendant in any proceeding in a chancery court, or in any proceeding in any other court where process by publication is authorized, by statute, be shown by sworn complaint or sworn petition, or by a filed affidavit, to be a nonresident of this state or not to be found therein on diligent inquiry and the post office address of such defendant be stated in the complaint, petition, or affidavit, or if it be stated in such sworn complaint or petition that the post office address of the defendant is not known to the plaintiff or petitioner after diligent inquiry, or if the affidavit be made by another for the plaintiff or petitioner, that such post office address is unknown to the affiant after diligent inquiry and he believes it is unknown to the plaintiff or petitioner after diligent inquiry by the plaintiff or petitioner, the clerk, upon filing the complaint or petition, account or other commencement of a proceeding, shall promptly prepare and publish a summons to the defendant to appear and defend the suit. The summons shall be substantially in the form set forth in Form 1-C.
The above rule of procedure is substantially the same as the formerly followed statute Miss. Code Ann. § 13-3-19 (Supp. 1972). Therefore, the former judicial decisions and treatises interpreting what constitutes diligent search and inquiry to ascertain addresses of non-residents of Mississippi may be relied upon to analyze the instant case.
Among this jurisdiction's oldest equity treatises is Griffith, Mississippi Chancery Practice, Bobbs-Merrill Company, Inc. (1925) analyzing Mississippi's requirements for summons by publication. Its applicability to this point of law is still apropos and is as follows:
§ 236 Requirements of publication statutes must be strictly observed.  It is the uniform and unbroken course of decision in this state that where notice by publication is resorted to, as a basis for the jurisdiction of the court, in lieu of personal summons all the requirements of the statute as to such notice must be strictly complied with, and it being a jurisdictional matter it cannot be cured by a recital in the decree as against a direct proceeding attaching it; ... and it is not enough merely to give the residence of defendant, it must give his post-office address, if known, and if not known it must be stated that it is not *416 known after diligent inquiry. An affidavit to support process by publication must strictly comply with the statute and if it omit averment of diligent inquiry it is insufficient. The affidavit for publication when made by an agent must cover the knowledge of the principal as well as of the affiant, as for instance, if an attorney makes the oath for his client the oath should show whether the knowledge or information is that of the attorney or the client, and an oath to a bill upon which a publication to non-residents was predicated which recited that "the matters and things stated in the bill on his own knowledge are true and those stated on information he believes to be true" will not support the publication.
Mississippi Chancery Practice at 225-227. See also, Amis, Divorce and Separation in Mississippi, § 244 (1935); Bunkley and Morse's Amis, Divorce and Separation in Mississippi, § 15.01(3) (1957). Bunkley's work states also:
It seldom happens that the published notice is defective, but the usual trouble is that the averments of the affidavit, or sworn bill, are insufficient to authorize any publication to be made at all. This arises out of a misconception of the purpose of the statute, or else a misunderstanding of its provisions. Publication for a non-resident, or absent defendant, is not a mere formal or perfunctory matter; but the purpose is to give the defendant actual as well as constructive notice of the suit and an opportunity to make defense thereto, if it be reasonably possible to do so. Due process of the law requires notice and an opportunity to be heard, and this applies to residents and non-residents alike when sued in the courts of this state... .
If he cannot be found in this state, and any fact in regard to his whereabouts and/or post office and street address be unknown to the complainant, then he or she must make an honest and diligent effort, or inquiry, to ascertain the same, so that when publication is made the clerk may send him a copy of the notice. Good faith to the court, as well as the statute, requires this to be done before any affidavit for publication is made. And if, at any stage of the proceedings, it should appear that such duty was not performed, and that the affidavit was not made in good faith after diligent inquiry under the facts of the particular case, the process should be quashed by the court, of its own motion, as a fraud on its jurisdiction; for courts sit to protect the rights of defendants as well as to enforce those of complainants.
Divorce and Separation in Mississippi at 283.
Judicial interpretations have given rise to these treatises by such cases as Ponder v. Martin, 119 Miss. 156, 80 So. 388 (1919); Diggs v. Ingersoll, 28 So. 825 (1900). In Mercantile Acceptance Corp. v. Hedgepeth, 147 Miss. 717, 112 So. 872 (1927), this Court stated regarding the requisite oath, as follows:
We are of opinion that the changes made in the statute with reference to the oath required to bring in by publication a nonresident defendant, are material changes; that they are vital and that they were intended to answer a wholesome purpose and will have the effect of doing so. If the complainant makes the oath that the post office address of the defendant is unknown to him, he ought to be required, as the statute does require, to go further and make oath that he has made diligent inquiry to ascertain his post office address; and if the oath is made by the complainant's attorney that the post office address of the defendant is unknown, he ought to be required, as the statute does require, to state that he had made diligent inquiry to ascertain his post office address, that he believes it is unknown to the complainant, and that the latter has made diligent inquiry to ascertain the same.
Mercantile Acceptance Corp., 112 So. at 874.
In the instant case, the husband made the affidavit that the address of his ex-wife was unknown after diligent search and inquiry. He testified to no inquiry at all, but relied upon the investigation of his attorney in this regard. The attorney's testimony *417 related to a point in time in August, 1986. The testimony of Mrs. Hall, the mother, was that she telephoned her ex-husband's household and talked with her children and received letters from them in the period of time forward from May, 1986. Mr. Smith telephoned her once in Alaska; his last letter to her omitted the apartment number from her address; he made no further search to locate her. Although he had reached her once by telephone, he did not attempt a second call to that same telephone to further his search. The record shows Mrs. Hall had a mother and sister residing in the same town in Alaska who might have provided information about the address.
This Court is of the opinion that this search and inquiry is insufficient and that the chancellor's finding in this regard was in error. Diligent efforts to secure actual notice to Mrs. Hall were not pursued. From May to December, 1986, telephone calls were being received at Caldwell's home from Mrs. Hall without further inquiry of her.
This Court, therefore, sets aside the December 23, 1986 decree as void for lack of proper notice to Mrs. Hall. Subsequent to that date, however, Mrs. Hall entered her appearance through her motion for citation for contempt. Mr. Caldwell has answered and counterclaimed seeking custody. The issues are joined with both parties properly before the court, and this Court remands this cause for such further proceedings as may be appropriate. Mrs. Hall is entitled to a hearing on the children's custody.
This Court is deciding the issue of jurisdiction and due process under Mississippi law finds that our procedures are adequate and independent of the necessity of looking to federal guidelines and precedent. Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). However, it is well to call attention to the bench and bar to the decision of the United States Supreme Court of Tulsa Professional Collection Services, v. Pope, 485 U.S. ___, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). At issue in the Pope case, supra, was whether Oklahoma's probate law providing for the barring of a creditor's claim complied with the Due Process Clause of the Fourteenth Amendment of the United States Constitution. In that case the decedent Pope died while a patient at a hospital. In due course the hospital assigned its claim for the decedent's last illness to Tulsa for collection, only to be denied payment by the executrix for failure to file its claim within the two month time period under Oklahoma probate law to file their claims following the estate's notice to creditors.
The executrix relied upon the substituted publication of notice rather than actual notice to creditors. The United States Supreme Court in Pope held, in summary form, the following:
[I]t was held that the Oklahoma nonclaim statute violated the due process clause of the Federal Constitution's Fourteenth Amendment, because, although the statute provided solely for publication by notice, due process required that actual notice be given to known or reasonably ascertainable creditors of the decedent by mail or other means as certain to insure actual notice, for (1) such a creditor's claim  a cause of action against the estate for an unpaid bill  was an intangible property interest protected by the due process clause; (2) the statute in question was not a self-executing statute of limitations; (3) instead, the pervasive and substantial involvement of the state probate court in the activation and operation of the statute's time bar constituted sufficient state action to implicate due process; (4) the statute could adversely affect a creditor's protected property interest by barring untimely claims and causing probate proceedings to extinguish such claims; and (5) although the state had a legitimate interest in the expeditious resolution of probate proceedings, (a) creditors had a substantial practical need for actual notice, (b) the required actual notice was not so cumbersome as to hinder unduly the dispatch with which probate proceedings are conducted, and (c) probate proceedings were not so different in kind as to require a different result from other analogous situations in which the pressing need to *418 proceed expeditiously had been held not to justify less than actual notice.
99 L.Ed.2d at 566.
An analysis and comparison of this decision is beneficial in reaching today's holding in the instant case. This Court holds that Mrs. Hall's substituted summons by publication was under these facts insufficient. The December 23, 1986 custody modification is set aside leaving the temporary decree of May 23, 1986 until an evidentiary hearing on the pleadings is held.
REVERSED AND REMANDED TO THE HARRISON COUNTY CHANCERY COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.