579 So.2d 1250 (1991)
Michelle Leigh SMITH By and Through her Mother and Next Friend, Sherry Haynes Young
v.
Estate of Leslie Clifton King, Deceased, Darlene Aroujo King, Admrx.
No. 07-CA-59300.
Supreme Court of Mississippi.
April 24, 1991.
Daniel H. Fairly, Wells Wells Marble & Hurst, Jackson, for appellant.
W. Rayford Jones, Jones Jones & Jones, Gulfport, for appellee.
En Banc.
SULLIVAN, Justice, for the Court:
This cause comes on appeal before this Court for the second time. The first time we heard this case we found that an administrator *1251 is under an affirmative duty to disclose to the court the existence of known potential heirs and claimants. Smith By and Through Young v. Estate of King, 501 So.2d 1120, 1123 (Miss. 1987) (hereinafter Estate of King I). We then remanded the cause to the chancery court for a new trial to determine whether the court must set aside the final decree distributing the assets, adjudicating the heirs and closing the estate on grounds of fraud because the illegitimate child's existence was not disclosed to the court.
Following the mandate of Estate of King I the chancellor at the conclusion of the second trial determined that the evidence failed to show that a fraud had been perpetrated on the court. The chancellor indicated that it was the illegitimate child's mother's duty to make the paternity issue known to the administratrix:
[W]hen a fraud is perpetrated, it has to be of such a nature that the whole matter reeks with it and I don't find that this does. Apparently a secret was kept about the child and I find that it was more further kept from Mrs. King, the administratrix, than from anyone else... .
Unhappy with the trial court's adjudication, Smith appeals to this Court. The assignment of error addressed by this Court is:
Whether the trial court erred in finding that no fraud was perpetrated on the court by the administratrix's omission to tell the court of a potential heir.
Though not raised by Smith on appeal, we are compelled to address a constitutional error not raised by Smith but of sufficient gravity for us to notice it pursuant to Rule 28(a)(3), Miss.Sup.Ct.R. The error is:
Whether an administrator is required to provide actual notice to known or reasonably ascertainable illegitimate children who are potential heirs and whose claims would be barred by the running of the ninety (90) day period under Miss. Code Ann. § 91-1-15(3)(c) (Supp. 1990).

I.

DID THE TRIAL COURT ERR IN FINDING THAT NO FRAUD WAS PERPETRATED ON THE COURT BY THE ADMINISTRATRIX'S OMISSION TO TELL THE COURT OF A POTENTIAL HEIR?
Our review of the chancellor's findings of fact is limited. We will reverse only if the findings are clearly erroneous and not supported by substantial, credible evidence in the record. Estate of Robinson v. Gusta, 540 So.2d 30, 33 (Miss. 1989).
Miss. Code Ann. §§ 91-1-27 and -29 (1972), require that paternity be established before an illegitimate can inherit by intestate succession. Estate of Robinson v. Gusta, 540 So.2d 30, 33 (Miss. 1989); Paschall v. Estate of Smiley, 530 So.2d 18, 25 (Miss. 1988). There is no dispute that Michelle Smith did not have her paternity adjudicated in an heirship proceeding under Miss. Code Ann. §§ 91-1-27 and -29 within ninety (90) days after the first publication to creditors as required by Miss. Code Ann. § 91-1-15(3)(c).[1]Estate of King I, 501 So.2d at 1122. Nor is there any dispute that both Mrs. King, the administratrix, and her attorney were aware that Michelle Leigh Smith could be an illegitimate child of the deceased, and that they omitted bringing this fact to the attention of the court during the probate proceedings because *1252 they did not believe Michelle Smith was an heir.
Mrs. King testified that her husband, the decedent, told her that he had sexual relations with Sherry Young, Michelle Smith's mother, one time and that Mrs. Young told him that the child, Michelle Smith, was his. He further told Mrs. King that he had never legitimized the child because he was not sure and did not believe that Michelle was his child. He did tell Mrs. King that he sent money to the child's mother on a few occasions. However, Mrs. King stated that this occurred before he married Mrs. King and it was not on a regular basis or for child support.
The decedent's sister, Mrs. Roberts, testified that she went with Mrs. King and her mother to their attorney's office a few days after the decedent's death. She told them that Michelle was her brother's daughter. At this meeting the attorney discussed with Mrs. Roberts the fact that legally Michelle's mother's now ex-husband, Mr. Smith, was the father of Michelle because Michelle's mother was married to him when Michelle was born. Mrs. Roberts pointed out that an exception in law existed whereby "if it is physically impossible for the husband to be the father then the law does not apply."[2] The attorney also asked whether the sister knew of any petition or any legal action that established Mr. King as the father of Michelle.
Michelle's mother, Sherry Young, also contacted Mrs. King's attorney in May 1983, one month after the decedent's death and prior to the running of the ninety (90) day bar. She testified that she called his office and told him she was calling about the estate of Leslie Clifton King, the father of her child. The attorney told her he was not aware of this knowledge, but if Mrs. Young would bring him a birth certificate he would help her.[3]
The fact that Michelle's mother did not directly disclose to Mrs. King that Michelle was the daughter of the deceased is irrelevant under the circumstances of this case because both Mrs. King and her attorney knew of the child's existence and potential right of inheritance. As administratrix, Mrs. King was under a duty to use reasonable diligence to ascertain potential heirs and to file the names of such heirs in the final account. Miss. Code Ann. § 91-7-293 (1972); Estate of King I, 501 So.2d at 1123. In this case the administratrix and her attorney determined that Michelle Smith was not an heir and forwent having the court adjudicate the heirs until the administratrix sought a final distribution of the deceased's assets on August 9, 1983, at which time Michelle's claim was barred due to the expiration of the ninety (90) day nonclaim statute.
We recognize that an administratrix "[i]s the arm of the court employed under the law to collect and distribute the estate of the deceased... ." In re Will of Hughes, 241 Wis. 257, 5 N.W.2d 791, 794 (1942). Moreover, she is a fiduciary to both the decedent's creditors and his heirs. Estate of King I, 501 So.2d at 1122; Shepherd v. Townsend, 249 Miss. 383, 392, 162 So.2d 878, 881, 10 A.L.R.3d 538, error overruled 249 Miss. 383, 163 So.2d 746 (1964). The difficulty we have with the chancellor's decision that no fraud was perpetrated on the court is that in this case Mrs. King claimed to be the sole heir at law and benefited from her silence regarding the existence of Michelle Smith. Cf. Tulsa Professional Collection Serv. v. Pope, 485 U.S. 478, 489, 108 S.Ct. 1340, 1347, 99 L.Ed.2d 565 (1988). We note that some foreign courts addressing similar issues have found that an executor's or administrator's failure to diligently search out heirs or to notify the court of potential heirs' existence is committing fraud. See e.g., Stevens v. Torregano, 192 *1253 Cal. App.2d 105, 13 Cal. Rptr. 604, 616 (Cal. App. 1 Dist. 1961) (though an executor had no duty to search out unknown heirs, to withhold information of a known heir constituted fraud because an executor is a fiduciary); In re Bailey's Estate, 205 Wis. 648, 238 N.W. 845, 848 (1931) (an omission by the administratrix of the existence of an illegitimate child who the administratrix believed was not an heir, constituted passive, if not active, fraud sufficient to sustain a revision of the order of distribution).
Rather than proceed judicially to get an adjudication of heirship prior to the running of the nonclaim statute, Mrs. King intentionally chose not to reveal the existence of Michelle Smith to the court relying on her and her attorney's determination that Michelle Smith was not an heir. Under the particular facts of this case we have no difficulty reaching the conclusion that the trial court erred in determining that the administratrix and her attorney did not perpetrate a fraud on the court. We find that Mrs. King's violation of her duty as administratrix which benefited her as an heir at law perpetrated a fraud on the court.
In reversing the chancellor's decision, we must set aside the final decree of distribution. This alone, however, is insufficient to provide Michelle Smith the remedy she seeks. Michelle still must meet the requirements of Miss. Code Ann. § 91-1-15(3)(c) (Supp. 1990).

II.

IS THE ADMINISTRATRIX REQUIRED TO PROVIDE ACTUAL NOTICE TO KNOWN OR REASONABLY ASCERTAINBABLE ILLEGITIMATE CHILDREN WHO ARE POTENTIAL HEIRS AND WHOSE CLAIMS WOULD BE BARRED BY THE RUNNING OF THE NINETY (90) DAY PERIOD UNDER THE NONCLAIM STATUTE, MISS. CODE ANN. § 91-1-15(3)(c) (Supp. 1990)?
Not only did the administratrix fail to notify the court of Michelle Smith's existence, but she further failed to notify Michelle Smith that her right to be adjudicated an heir would be terminated in ninety (90) days under the nonclaim statute which began running when the administratrix published notice to creditors. We take notice of the fact that Michelle Smith did file within the one (1) year self-executing period which ran from the date of her father's death. Further, we recognize that to deny an illegitimate the right to institute heirship proceedings when the child, of whose existence the administratrix was aware, had no knowledge that the administratrix published notice to creditors is a harsh result which we do not look upon favorably.
In Perkins v. Thompson, 551 So.2d 204 (Miss. 1989), we held that an illegitimate child seeking to be appointed administratrix and the sole heir-at-law was not required to give notice to those persons who would inherit if her claim should fail. Perkins, 551 So.2d at 208; see also, In re Estate of Gardner, 566 So.2d 1208, 1212 (Miss. 1990) (citing Perkins). Factors relevant to this determination were that the intervenors had actual knowledge of the claim to heirship, the intervenors were properly allowed to file their claim, the summons by publication of § 91-1-29 was properly made, and all parties were given their day in court. Perkins, 551 So.2d at 208.
Perkins, however, is distinguishable from this case. First, in this case while Michelle, through her mother, had actual knowledge of the proceedings, she may not have known that the administratrix took action which decreased the one (1) year period to have Michelle's paternity adjudicated to ninety (90) days. Second, unlike the interested parties in Perkins, Michelle was barred from filing her claim due to the running of the nonclaim statute. Finally while in Perkins all parties received their day in court, in the instant case Michelle did not. Thus, we find our holding in Perkins is not controlling in this case.
Additionally, we question the constitutionality of the lack of actual notice to Michelle Smith. We begin with an analysis of our decision in Caldwell v. Caldwell, 533 So.2d 413 (Miss. 1988), where we reviewed *1254 the sufficiency of notice required under our state's due process law. In Caldwell we set aside a divorce decree as void for lack of sufficient notice because though substituted summons by publication was provided, "[d]iligent efforts to secure actual notice ... were not pursued." Caldwell, 533 So.2d at 417. Relevant to our decision was our endorsement of the United States Supreme Court's holding in Tulsa Professional Collection Servs. v. Pope, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988), which in summary form stated the following:
[I]t was held that the Oklahoma nonclaim statute violated the due process clause of the Federal Constitution's Fourteenth Amendment, because, although the statute provided solely for publication by notice, due process required that actual notice be given to known or reasonably ascertainable creditors of the decedent by mail or other means as certain to insure actual notice, for (1) such a creditor's claim  a cause of action against the estate for an unpaid bill  was an intangible property interest protected by the due process clause; (2) the statute in question was not a self-executing statute of limitations; (3) instead, the pervasive and substantial involvement of the state probate court in the activation and operation of the statute's time bar constituted sufficient state action to implicate due process; (4) the statute could adversely affect a creditor's protected property interest by barring untimely claims and causing probate proceedings to extinguish such claims; and (5) although the state had a legitimate interest in the expeditious resolution of probate proceedings, (a) creditors had a substantial practical need for actual notice, (b) the required actual notice was not so cumbersome as to hinder unduly the dispatch with which probate proceedings are conducted, and (c) probate proceedings were not so different in kind as to require a different result from other analogous situations in which the pressing need to proceed expeditiously had been held not to justify less than actual notice.
Caldwell, 533 So.2d at 417-18 (citing Tulsa Professional Collection Servs. v. Pope, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988)).
We note that in the instant case the provision requiring paternity adjudication within one (1) year from the death of the intestate is self-executing. However, the lesser alternative provision requiring adjudication within ninety (90) days from the first publication of notice to creditors is not. It operates in conjunction with the probate proceedings to bar the petitioner's right to assert a claim to the deceased's property. The similarities between Pope and the instant case benefit us in deciding today's case.
Based on our analysis and comparison of Pope and Caldwell, we hold that the administratrix, Mrs. King, was required to provide actual notice to known or reasonably ascertainable illegitimate children who were potential heirs and whose claims would be barred by the running of the ninety (90) day period from the notice of publication to creditors under the nonclaim statute, Miss. Code Ann. § 91-1-15(3)(c) (Supp. 1990). To hold otherwise would encourage administrators and executors to do exactly what Mrs. King did  benefit as an heir at law by setting in motion the shorter filing period which, unbeknownst to the potential heir, has significantly shortened the time for the potential heir to meet the statutory requirements to inherit as an heir.
In sum, the decree closing the estate must be set aside and the expiration of ninety (90) days from publication to creditors shall not bar Michelle Smith from presenting her claim of inheritance. We further find that since Michelle Smith had her paternity adjudicated before the running of the one (1) year self-executing period as required by Miss. Code Ann. § 91-1-15(3)(c) (Supp. 1990), she is an heir at law entitled to inherit through her illegitimate father. We remand this case for a final accounting of the estate's assets which will include a new adjudication of the heirs at law.
*1255 REVERSED AND REMANDED IN PART, REVERSED AND RENDERED IN PART.
DAN M. LEE, P.J., PRATHER, ROBERTSON and McRAE, JJ., concur.
BANKS, J., concurs by separate written opinion.
HAWKINS, P.J., dissents and files separate opinion joined by ROY NOBLE LEE, C.J., and PITTMAN, J.
PITTMAN, J., dissents and files separate opinion joined by ROY NOBLE LEE, C.J., and HAWKINS, P.J.
HAWKINS, Presiding Justice, dissenting:
I respectfully dissent.
Michelle Leigh Smith was born May 15, 1974, in Brookhaven. Her mother, as shown on her birth certificate, is Sherry Darlene Haynes, who was 17 years of age at the time. The certificate shows her father as Dwight Anthony Smith, age 21. On September 17, 1976, a divorce decree based upon irreconcilable differences was granted by the chancery court of Lincoln County, divorcing Sherry H. Smith and Dwight A. Smith. The decree states the two were married on or about October 25, 1973, and that the complainant gave birth to Michelle Leigh on May 15, 1974, but that this child is not the child of the defendant.
Leslie Clifton King married Darlene Aroujo King on February 5, 1983. King, an adult resident citizen of the First Judicial District of Harrison County, died intestate in Pensacola, Florida, on April 17, 1983. On April 19 his widow petitioned the chancery court for letters of administration, alleging that she was the "sole surviving heir." Notice to creditors was duly published in the April 22, 29, and May 6 issues of the local newspaper. On August 9, 1983, Mrs. King petitioned the court for her final discharge. In this petition she alleged herself to be the decedent's "sole surviving heir-at-law," "the only person having any interest" in the estate, and that she should be adjudicated the sole owner of all the decedent's properties.
A decree was entered on the same date adjudicating the above allegations and discharging Mrs. King as administratrix.
On February 6, 1984, Sherry Leigh Smith, as mother and next friend of Michelle, filed a petition in the chancery court of the First Judicial District of Harrison County alleging that Michelle was the natural daughter of Leslie Clifton King.
On May 7, 1984, Mrs. King filed an answer, denying the allegations of paternity, and denied that the petition was timely filed. On August 1, 1985, Mrs. King filed a motion to dismiss the petition because it was not timely filed as required by Miss. Code Ann. § 91-1-15. A decree dismissing the petition was entered August 13, 1985.
This Court reversed and remanded. See Smith by and through Young v. Estate of King, 501 So.2d 1120 (Miss. 1987).
Upon remand Mrs. King testified that during her husband's lifetime he had told her that Sherry claimed that he was the father of Michelle, but that he was not sure. He also told her that he had given gifts to Michelle.
Diane King Roberts, a sister to King, testified that she stayed at Mrs. King's home during the funeral, and that she told Mrs. King and her mother that Michelle was the daughter of King. They looked for cancelled checks showing payments by King to Sherry during his lifetime. Mrs. Roberts also accompanied Mrs. King and her mother to the attorney's office on April 19, 1983, and she told Mrs. King's attorney in their conference that Michelle was King's daughter.
Sherry and Michelle appeared at King's wake. They sat next to Mrs. King and her mother. The mother noted the resemblance between King and Michelle. It is thus clear that Mrs. King had actual knowledge that her husband had been told that Michelle was his daughter, and that his sister Mrs. Roberts positively claimed Michelle was his daughter. Moreover, Sherry and Michelle appeared at King's wake and sat next to and chatted with Mrs. King.
On the other hand, the record also makes it clear that Sherry knew, of course, that *1256 King had died. She also knew his estate was being administered, because she telephoned Mrs. King's attorney during the time about putting in a claim. The attorney told her she would have to file a petition making a claim.
On direct examination Sherry testified:
It was in May of '83, I called his [the estate attorney's] office and I told him who I was and I told him it may sound strange but I was calling about the estate of Leslie Clifton King, which was the father of my child, and he said, "I'm not aware of any  of this knowledge but if you can get me a birth certificate or something, I will be glad to help you.
(Vol. II, p. 70)
On cross-examination Sherry testified:
Q: Mrs. Freeman, you recall calling me about a month after Mr. King died:
A: Yes, sir.
(Vol. II, p. 77)
Q: Do you recall me telling you at that time that we would have to have something to go on in order to file a claim for this child or to recognize the child that you would have to file a petition in the Court on it?
A: Yes.
(Vol. II, p. 78)
No such claim was filed within 90 days of notice to creditors. A petition was filed, however, within one year of the death of King.
The chancery court dismissed the complaint, finding no fraud had been perpetrated by Mrs. King upon Sherry or Michelle, and that their petition to establish heirship had not been timely filed.

LAW
The following is clear from the record:
1. The chancery court at no time during the administration of King's estate was informed directly or indirectly that there was any claim by anyone that King had a natural daughter born out of wedlock. Mrs. King's petition alleged that she was the sole and only heir-at-law and sole party in interest in his estate.
2. On the other hand, Sherry was not misled in any way by this failure. She knew King was dead and his estate was being administered, and also, that she should file a petition making a claim. She had ample opportunity to file such a petition. She even hired a private detective to help her locate an insurance policy she believed King had taken out in Lincoln County during his lifetime.
The first assignment of error on the former appeal was that the chancellor should have permitted the petitioners to amend their complaint so as to allege fraud perpetrated upon the chancery court by the failure of Mrs. King as administratrix to inform the court of the existence of Michelle and her claim to be his daughter. We held that the chancellor erred in refusing to permit the amendment.
The second question we addressed was the effect "proven fraud" would have upon the 90 day limitation of Miss. Code Ann. § 91-1-15. We then held that an administratrix is a "fiduciary" and "trustee" both to the creditors and heirs, and as such had a duty to "exercise reasonable and ordinary diligence to determine and locate heirs." We then cited Miss. Code Ann. § 91-7-293, which requires the administrator to file under oath with his final account the names of heirs and their places of residence as far as known. We likewise cited Miss. Code Ann. § 91-7-295, which requires the administrator to cause summons to be issued for "all parties interested" as far as known to the administratrix.
We then remanded the cause to be heard on the amended petition.
Following the hearing upon remand the chancellor found that there was no fraud practiced upon the court, and dismissed the petition, finding:
The mother of this child that is in this Court now is the one that should have come forward and said something about it, let these people know. Don't send a private detective hunting a trust account. But she didn't and sat on the sidelines apparently... . When a fraud is perpetrated, *1257 it has to be of such a nature that the whole matter reeks with it and I don't find that this does. Apparently a secret was kept about the child and and [sic] I find that it was more further kept from Mrs. King, the administratrix, also than from anyone else. So with that in mind I am going to sustain your motion, Mr. Jones, and find that fraud was not perpetrated in this matter and the matter will stand at that until further notice. [Emphasis added]

(T. 91, 92)
The chancellor was manifestly correct. The majority makes an ado of Mrs. King's failure as administratrix when she filed her final account to list Michelle as a potential heir, as required by Miss. Code Ann. § 91-7-293 (Majority Opinion, p. 1253). This begs the question: Was Michelle then an heir? Although told to do so, Sherry filed no petition within the 90-day period. It is, of course, correct that under both Miss. Code Ann. §§ 91-7-293 and 91-7-295 the administratrix had a duty when she filed her final account to state the names of all heirs and issue summons for them. These statutes were for the benefit of people who would unquestionably be heirs. They were also enacted when a child born out of wedlock was treated entirely differently than is now provided by Miss. Code Ann. § 91-1-15 (Supp. 1981). See: Miss. Code Ann. § 91-1-15 (1972 Code prior to amendment in 1981).
For sake of argument, let us concede that Mrs. King as administratrix had sufficient information and was under a duty to inform the Court on August 7 when she sought her discharge that Sherry had told her the decedent was the natural father of Michelle. Suppose she had so informed the court, and suppose  as was the case  she had also informed the court that Sherry knew King was dead, had attended the funeral, knew the estate was being administered prior to the expiration of the 90-day period, and had even been informed by the estate's attorney during this period that if she desired to make a claim she would have to file a petition? Under Miss. Code Ann. § 91-1-15(3)(c) the chancery court would not have had the authority to keep the estate open for the purpose of Sherry filing such petition, because her claim was then barred. This section clearly requires the person claiming to be an heir to file a petition for heirship with "90 days after first publication of notice to creditors." Miss. Code Ann. § 91-1-15(3)(c). The first publication of notice to creditors was April 22, and the petition was presented in August, 1983. Sherry and Michelle were not misled or affected in any manner by the failure of the administratrix to notify the court of her claim.
This State presently makes no difference in the inheritance under the statutes of descent and distribution between illegitimate and legitimate offspring of a natural father. Miss. Code Ann. § 91-1-15. There is, however, a very sound basis for the State to require, as a condition precedent for this equal treatment, that the child born out of wedlock take definite affirmative steps within a set limited time period. Thus, Miss. Code Ann. § 91-1-15(3)(c). Today the majority emasculates this condition precedent. The majority does not find it significant that this was not a case in which the illegitimate knew nothing of the death of the natural father, and nothing of the administration of the estate, but is precisely the reverse. The majority ignores that Sherry, the mother, had actual knowledge of the estate being administered and was expressly told well before the expiration of the 90-day time period by the attorney for the estate that if she desired to make a claim it would be necessary to file a petition.
Had the administratrix's failure to inform the court of a potential claim by Sherry misled her, or been the cause of her failure to file a claim, we would have an entirely different matter. Indeed, Miss. Code Ann. §§ 91-7-293 and 91-7-295 make no requirement that an administrator notify a court of potential heirs prior to the expiration of the 90-day notice, anyway. As above noted, when the administratrix presented her petition for discharge in August, 1983, Michelle's claim as a child born out of wedlock was already barred by the statute, Miss. Code Ann. §§ 91-7-145, 91-1-15(3)(c), *1258 because she had not filed a petition for heirship proceedings under Miss. Code Ann. §§ 91-1-27 and 91-1-29.[1] The failure, therefore, on the part of the administratrix to notify the court of a possible claim by Sherry on behalf of Michelle had no effect on the filing of a petition within the 90-day period.
Miss. Code Ann. § 91-1-15(3)(c) provides:
(3) An illegitimate shall inherit from and through the illegitimate's natural father and his kindred, and the natural father of an illegitimate and his kindred shall inherit from and through the illegitimate according to the statutes of descent and distribution if:
... .
(c) There has been an adjudication of paternity after the death of the intestate, based upon clear and convincing evidence, in an heirship proceeding under sections 91-1-27 and 91-1-29. However, no such claim of inheritance shall be recognized unless the action seeking an adjudication of paternity is filed within one (1) year after the death of the intestate or within ninety (90) days after the first publication of notice to creditors to present their claims, whichever is less; and such time period shall run notwithstanding the minority of the child... .
The majority tells us that under this section an administratrix is required:
... to provide actual notice to known or reasonably ascertainable illegitimate children who were potential heirs and whose claims would be barred by the running of the ninety (90) day period from the notice of publication to creditors under the nonclaim statute, Miss. Code Ann. § 91-1-15(3)(c) (Supp. 1990).
(Majority Opinion, p. 1255). "Actual notice" of what? Sherry had actual notice the claimed father was dead, and actual notice his estate was being administered. She also had actual notice during the 90-day time period that if she wanted to make a claim she should file a petition. In fairness what more should have been required? Does the majority mean that this section actually required the attorney to also advise Sherry that if she wished to make an inheritance claim that a petition for heirship had to be filed by July 21, 1983, the expiration of the 90-day period? The majority reads more in the section than I. Also, I confess an unease with the portent of the affirmative duty the majority reads under this section for an administrator of an estate to on his own locate "reasonably ascertainable illegitimate children."[2] The majority substitutes judicial uncertainty in the place of statutory certainty.
In sum, the special duties the majority imposes upon an administrator do not come from any statute, but are a judicially-created affirmative action, while at the same time the majority removes the affirmative action required by statute of the person claiming to be an heir, even one who has not been misled. I have no quarrel with the law announced in the majority cited Tulsa Professional Collection Serv. v. Pope, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988); Perkins v. Thompson, 551 So.2d 204 (Miss. 1989); or Caldwell v. *1259 Caldwell, 533 So.2d 413 (Miss. 1988), involving clearly distinguishable facts.
If the majority should happen to think unconstitutional the affirmative requirement of Miss. Code Ann. § 91-1-15(3)(c) that a child born out of wedlock make its claim within 90 days of the first notice of publication to creditors, then it should say so. I would not agree, but at least I could understand. Instead, the majority emasculates and changes its meaning by interpreting Miss. Code Ann. § 91-1-15(3)(c) radically different than its plain wording. The majority removes from the shoulders of the claimant the affirmative statutory duty to come forward, and places upon the shoulders of the administrator the duty to go and seek.
I would affirm.
ROY NOBLE LEE, C.J., and PITTMAN, J., concur.
PITTMAN, Justice, dissenting:
I concur in the dissenting opinion of Justice Hawkins, adding only the following thoughts.
Miss. Code Ann. §§ 91-7-293 and 91-7-295 require an administrator, as a fiduciary, to exercise reasonable diligence in determining an estate's heirs and creditors. In discharging this obligation, the administrator will provide notice to known parties by summons and notice to unknown parties by publication. This is what our statutes require. The majority, however, would go further.
Under the decision reached today, an administrator will be required to "provide actual notice to known or reasonably ascertainable illegitimate children who were potential heirs ..." (Majority Opinion, p. 1255). This appears to be a mandate for administrators to search the streets and back alleys for heirs and prospective heirs; an obligation to search out rumor and innuendo. This goes too far. Today's majority, as observed by Justice Hawkins, wrongfully removes the charge upon the claimant to come forward, and places a duty upon the administrator to seek out.
I would affirm.
ROY NOBLE LEE, C.J., and HAWKINS, P.J., join this dissent.
BANKS, Justice, concurring:
I concur in the result reach by the majority because I agree with its holding that Miss. Code Ann. § 91-1-15(3), (1972) is constitutionally defective, if it is applied to provide a bar based on a period of limitations triggered by court action without a requirement of notice to parties whose interests should reasonably be known to the petitioner who invokes the court's action. Tulsa Collection Services v. Pope, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988).
Since the proceedings began in this matter, the legislature has, apparently in response to Tulsa Collection Services, amended our notice to creditors statute to provide for actual notice as follows:
[t]he executor or administrator shall make reasonably diligent efforts to identify persons having claims against the estate. Such executor or administrator shall mail a notice to persons so identified, at their last known address, informing them that a failure to have their claim probated and registered by the clerk of the court granting letters within the ninety (90) day period provided for in subsection (2) of this section will bar such claim.
Miss. Code Ann. § 91-7-145.
This provision should be read as applying to persons having claims as purported heirs pursuant to Miss. Code Ann. § 91-1-15.
I disagree with the majority in its determination that the Chancellor erred in finding no fraud. No statute in force during the proceedings herein compelled an administratrix to affirmatively seek adjudication of paternity within the ninety-day period provided in the published notice to creditors, which corresponds with the ninety-day provision in § 91-1-15. Here the question of paternity is disputed. The administratrix alleged in her petition for letters of *1260 administration that she is the sole heir. She still maintains that she is the sole heir. There is nothing fraudulent in that allegation. After the running of the ninety days and the settlement of claims filed, when she is statutorily permitted and required to file a final accounting, Miss. Code Ann. §§ 91-7-291, -293, -295, she had no reason to tell the court of or issue a summons for any potential claimant claiming under the provisions of § 91-1-15 because by the terms of that statute any such claim was barred.
Perhaps proving the adage that hard cases make bad law, our prior decisions have led us down the path of fraud to the creation of duties for administrators not legislatively imposed without acknowledging the constitutional source of those duties. In Matter of Flowers v. Gregory, 493 So.2d 950 (Miss. 1986), we suggested that an administrator's allegation in his petition for letters of administration that a sister was the sole heir might be fraud where the administrator knew of an illegitimate daughter. We explicitly avoided the constitutional issue which we decide today. Our statutory scheme does provide that persons entitled to distribution are given preference in the grant of letters of administration. Miss. Code Ann. § 91-7-63. A daughter would take to the exclusion of a sister and a false allegation that a sister was the sole heir may have affected the issuance of the letters. Thus an arguable claim for fraud was presented by that situation.
Next came the first round of the instant case. On the authority of Matter of Flowers we again reversed to determine the issue of fraud. Estate of King, 501 So.2d 1120 (Miss. 1987). Here the petitioner for letters of administration was the wife, a person entitled to distribution and the preferred person, first in line, under the statute. Miss. Code Ann. § 91-7-63. King's allegation that she is the sole heir could not have been a determining factor in the issuance of the letters of administration because she was entitled to that relief whether or not she is the sole heir. It cannot be said that she fraudulently induced the court to do anything by virtue of her petition. Her next required filing with the court concerning those having claims against the estate was the final accounting which came only after the time Smith's claim was barred. Nothing in this filing could be the basis for fraud. The only issue remaining for determination on remand then was whether King actively misled Smith to prevent her from filing a claim.
The third time that we dealt with the notice issue with relation to § 91-1-15 was in Leflore by Primer v. Coleman, 521 So.2d 863 (Miss. 1988). There the administratrix in her petition acknowledged the existence of illegitimate purported heirs and stated that there had been no adjudication of paternity. The ninety day period expired without action on behalf of the heirs. We held that by virtue of the fact that the administratrix acknowledged their existence, she was required to give the heirs notice under § 91-7-293 and that the failure to do so excused claimants' compliance with § 91-1-15. We ignored the fact that giving notice under § 91-7-293 would avail a claimant who has not complied with § 91-1-15 nothing because § 91-7-293 notice comes only after the expiration of ninety days.
By relying on § 91-7-293 to hold that the chancellor erred in determining that there was no fraud, we continue to ignore the fact that any failure of notice under that section cannot bear a causal relationship to the failure of Smith to make her claim in a timely fashion because such a notice would have come perforce after the expiration of the ninety day period. For the same reason, such a failure cannot have induced the court to have acted differently because by that time the court would have been compelled to apply the statutory bar. I therefore, decline to join that portion of the majority opinion based on fraud or breach of fiduciary duty. Under the circumstances here presented, the failure to give notice is not offensive to our statutory scheme nor a failure of an administratrix to honor any fiduciary duty. The problem is that our statutory scheme failed to provide due process of law. We appropriately respond *1261 to that failing by refusing to give effect to the offensive statutory bar.
NOTES
[1] The nonclaim statute states in pertinent part:

(3) An illegitimate shall inherit from and through the illegitimate's natural father and his kindred, and the natural father of an illegitimate and his kindred shall inherit from and through the illegitimate according to the statutes of descent and distribution if:
.....
(c) There has been an adjudication of paternity after the death of the intestate, based upon clear and convincing evidence, in an heirship proceeding under sections 91-1-27 and 91-1-29. However, no such claim of inheritance shall be recognized unless the action seeking an adjudication of paternity is filed within one (1) year after the death of the intestate or within ninety (90) days after the first publication of notice to creditors to present their claims, whichever is less; and such time period shall run notwithstanding the minority of a child... .
Miss. Code Ann. § 91-1-15(3) (Supp. 1990).
[2] Although Dwight Anthony Smith is listed as Michelle's father on her birth certificate, he was in Germany when the child was conceived. With the knowledge that Michelle was not his child, Mr. Smith married Michelle's mother in October, two months after she became pregnant. The Smiths were later divorced, and in the decree it is stated that Michelle is not the child of Mr. Smith.
[3] Mrs. Young did not bring a birth certificate because it had Dwight Smith's name on it as the father. Mrs. Young had no further contact with the attorney.
[1] Nor should the administratrix or estate attorney be faulted under the facts of this case for failing to inform the court of Michelle's claim when they sought to close the estate and discharge the administratrix. Sherry had telephoned the attorney about a month after the notice of publication to creditors and told him the decedent was Sherry's father. The attorney told her plainly that if she would get him some kind of evidence he would be glad to help her. Also, he told her if she wished to make a claim she had to file a petition. Significantly to the estate attorney, she filed nothing within the 90-day period. When the administratrix and the estate attorney stood before the chancellor on the day of closing the estate in August, 1983, Michelle was not an heir, or Miss. Code Ann. § 91-1-15(3)(c) is meaningless.
[2] There is a vast difference between the duty which should and is required of an administrator to locate names and addresses of heirs born of a marriage, which can be found by a search of public records and inquiry of the family, and children born out of wedlock. Moreover, children born of a marriage have no statutory duty to come forward and claim to be an heir within 90 days of the first notice of publication of creditors. Shepherd v. Townsend, 249 Miss. 383, 162 So.2d 878 (1964). Surely, no "for examples" are needed to fortify this observation.