656 So.2d 318 (1995)
George TOUART, Peggy Mullins, J.B. Carter and Jackson County Board of Supervisors
v.
Albert Sidney JOHNSTON, III, Youth Court Judge of Jackson County.
No. 93-CA-01310-SCT.
Supreme Court of Mississippi.
June 8, 1995.
James H. Heidelberg, Colingo Williams Heidelberg Steinberger & McElhaney, Pascagoula, Jennifer L. Smith, Nashville, TN, for appellant.
Earl L. Denham, Levi & Denham, Ocean Springs, for appellee.
Before PRATHER, P.J., and BANKS and SMITH, JJ.
SMITH, Justice, for the Court:
George Touart, Peggy Mullins, J.B. Carter and the Jackson County Board of Supervisors (hereinafter Appellants) have appealed to this Court from the dismissal of their Writ of Prohibition sought in the Jackson County Circuit Court against Albert Sidney Johnston, III, Youth Court Judge of Jackson County.
*319 Judge Johnston appointed Deirdre Sabine McGowan as Youth Court Administrator to replace Margaret Steele, who had resigned to take another employment position. The Jackson County Board of Supervisors hired J.B. Carter as Steele's replacement, referring to Carter's position as "Youth Court Facilities Administrator." Judge Johnston issued a temporary injunction concerning the Board's appointment of Carter. This Court appointed Judge Joe N. Pigott to preside over this case. Judge Pigott dismissed appellants' requested Writ of Prohibition against Judge Johnston. Appellants moved for reconsideration, or alternatively, for clarification of the order of dismissal. Judge Pigott denied the appellants' motion and additionally found it to be "frivolous" and filed to delay the proceedings, thus Rule 11 sanctions were assessed against appellants.
Aggrieved, appellants present the following assigned errors for this Court's consideration:
I. THE MISSISSIPPI CONSTITUTION PROHIBITS THE YOUTH COURT JUDGE FROM EXERCISING BOTH JUDICIAL AND EXECUTIVE FUNCTIONS OF GOVERNMENT.
A. The separation of powers doctrine under Article 1, §§ 1 and 2 of the Mississippi Constitution applies to Youth Court judges.
B. Administration of youth detention and shelter facilities is at the core of the executive branch of government.
C. The Youth Court Judge may not delegate authority at the core of the executive branch of government.
II. THE JACKSON COUNTY BOARD OF SUPERVISORS HAS STATUTORY AUTHORITY TO HIRE A YOUTH COURT FACILITIES ADMINISTRATOR.
III. THE CIRCUIT COURT ERRED IN IMPOSING SANCTIONS UPON PLAINTIFFS PURSUANT TO RULE 11(b), MISS.R.CIV.P., FOR FILING THEIR MOTION FOR RECONSIDERATION, OR IN THE ALTERNATIVE, FOR CLARIFICATION.
Appellants failed to raise Issue I, as to whether Miss. Code Ann. § 43-21-119 or any other part of the Youth Court Act was unconstitutional at trial. Therefore, appellants are not entitled to present this new issue before this Court.
The issue of whether Judge Johnston had the authority to hire a new Youth Court Administrator can be determined without considering the constitutionality of the Youth Court Act. We find the appellants' claims to be without merit. Statutory authority for the appointment of a Youth Court Administrator is clearly granted only to the Youth Court Judge. Judge Johnston complied with all appropriate statutes in his appointment of a replacement Youth Court Administrator.
Issue II, concerning whether the Board had statutory authority to hire a Youth Court Facilities Administrator is totally devoid of merit. There is no statutory authority per se but, contrary to the argument of appellants, Judge Pigott did not prohibit the Board from hiring a "facilities administrator." Judge Pigott instead determined that the Board could not interfere in Judge Johnston's hiring of a Youth Court Administrator. Judge Pigott did note that there was no statutory support for the Board's position that they could hire a Youth Court Facilities Administrator, constituting a second and separate administrator from Judge Johnston's Youth Court Administrator.
We find Issue III, whether Judge Pigott's imposition of sanctions was proper, to be without merit and discussion thereof unnecessary.

STATEMENT OF FACTS
Margaret Steele, former Youth Court Administrator for Jackson County, resigned effective July 30, 1993, to take another employment position. Judge Albert Sidney Johnston, III, was the duly elected Youth Court Judge of Jackson County in 1993. Johnston testified that he believed his predecessor separated Steele's position from the Youth Court and placed Steele's salary into the "facilities category" for budgeting reasons  to lower expenditures of the Youth Court. Johnston testified he intended to "put it back together." The Youth Court offices, staff *320 and youth detention were located inside the Youth Court Facility.
Judge Johnston maintained that it was his responsibility to carry out the function of the Youth Court and everything involved in carrying out that policy was accomplished by his own actions or by delegating authority through the Court Administrator, formerly Steele. He stated that Steele performed all the non-judicial tasks of the court, everything except actually "climbing up on the bench."
Johnston also stated that if the Board of Supervisors wanted to hire a Youth Facilities Administrator, that was fine, but the position of Youth Court Administrator was statutorily a position under his direction and control. Johnston stated that if J.B. Carter was employed by the Board, he could take care of the youth court facilities.
Judge Johnston testified that his appointment of Deirdre McGowan as Youth Court Administrator complied with Miss. Code Ann. § 9-17-1, which explained how court administrators are hired. He forwarded a copy of the appointment order to this Court, which approved the appointment.
Pamela Samples, Administrative Secretary for Judge Johnston was designated "Assistant Court Administrator" by Judge Johnston. She testified that Margaret Steele ran the Youth Court in the Judge's absence, and performed the non-judicial tasks of the court.
Charlie Moseley, President of the Jackson County Board of Supervisors, stated that Steele was the former Youth Court Facilities Administrator. Upon Steele's resignation, the Board instructed George Touart, County Administrator, to begin interviewing for a replacement. The Board hired J.B. Carter to be the "Youth Court Facilities Administrator," whereupon Judge Johnston issued an injunction preventing Carter from commencing work. Moseley claimed that the Board had in the past appointed persons to this position. According to Moseley, the Board agreed that Judge Johnston "has complete control over his Youth Court." Moseley further explained the Board's position by stating, "The Judge has charge of the personnel that are involved in his court. We have charge of the facilities, which includes the facilities personnel." Moseley claimed Steele was budgeted as Facilities Administrator and Pam Samples was paid as Youth Court Administrator.
George Touart, Jackson County Administrator, testified that the Facilities Administrator for the Youth Court was "in charge of the shelter." He stated that Margaret Steele was the Facilities Administrator and the duties of the position were related to the operation of the shelter. Touart denied that the Board hired Carter to fill the same position for which McGowan was selected by Judge Johnston. He agreed, however, that the lawsuit was over the fact that both the Board and Judge Johnston wanted to appoint different individuals to fill the same position.
At the conclusion of the testimony an order was entered by Judge Pigott dismissing the Complaint with Touart and assessing the Board costs. Appellants filed a motion for reconsideration or, in the alternative, for clarification. Following oral arguments and the presentation of memoranda, by order dated October 14, 1993, the motion was denied and, the court, finding the motion was filed for the purpose of delay and with no reasonable expectation of success, assessed sanctions under M.R.C.P. 11(b)

DISCUSSION OF LAW

I. THE MISSISSIPPI CONSTITUTION PROHIBITS THE YOUTH COURT JUDGE FROM EXERCISING BOTH JUDICIAL AND EXECUTIVE FUNCTIONS OF GOVERNMENT.

A. The separation of powers doctrine under Article 1, §§ 1 and 2 of the Mississippi Constitution applies to Youth Court judges.

B. Administration of youth detention and shelter facilities is at the core of the executive branch of government.

C. The Youth Court Judge may not delegate authority at the core of the executive branch of government.
Appellants requested that an extraordinary writ be issued prohibiting Judge Johnston from enforcing his temporary injunction, issuing any other order regarding *321 the appointment of "personnel at the Youth Court Detention Facility," and from "interfering in any way with the appointment of J.B. Carter as Youth Court Facilities Administrator."
Appellants conclude that to the extent that Miss. Code Ann. § 43-21-119 (1972) or any other provision "makes the youth detention and shelter facilities administrator an employee of the youth court or permits youth court judges to appoint and/or supervise the duties of the facilities administrator, it is unconstitutional."
This Court has made clear that a strong case must be presented in arguing against the constitutionality of legislative enactments:
With regard to the duties cast upon the assailant of a legislative enactment, the rule is fixed that a party who alleges the unconstitutionality of a statute has the burden of substantiating his claim and must overcome the strong presumption in favor of its validity. It has been said that the party who wishes to pronounce a law unconstitutional takes on himself the burden of proving this conclusion beyond all doubt, and that a party who asserts that the legislature has usurped its power or has violated the Constitution must affirmatively and clearly establish his position.
Van Slyke v. Board of Trustees, 613 So.2d 872, 880 (Miss. 1993). citing 11 Am.Jur., Constitutional Laws § 132 (1937).
As always, an appellant is not entitled to raise new issues on appeal since to do so denies the trial court the opportunity to address the matter. Crowe v. Smith, 603 So.2d 301 (Miss. 1992).
The issue of whether § 43-21-119 or any other part of the Youth Court Act is unconstitutional was not raised in the appellants' complaint. Accordingly, appellants' extensive argument presented here alleging control of the Youth Court facilities by Judge Johnston "would impermissibly encroach on the executive branch of government in violation of separation of powers" was not considered below. We decline to here consider the argument.
This Court can determine this appeal concerning whether Judge Johnston had the authority to hire a new Youth Court Administrator without considering whether the challenged portions of the Youth Court Act are constitutional. We also note that the constitutionality of the Youth Court system has been both directly, and by implication, upheld. In Interest of T.L.C., 566 So.2d 691 (Miss. 1990); In Interest of M.I., 519 So.2d 433 (Miss. 1988). In the latter case, this Court declined to analyze the issue of whether a residential detention facility for girls was legal. The Court noted:
It is not necessary that we decide the constitutional issues. Courts will not decide a constitutional question unless it is necessary to do so in order to decide the case. Mississippi PSC v. Miss. Power & Light, 593 So.2d 997 (Miss. 1991), citing Kron v. Van Cleave, 339 So.2d 559, 562 (Miss. 1976).
As error, [Appellant] would have us determine, among other things, the legality of his home for girls... . We are of the opinion that this issue is not properly before the Court, and decline to wade through this quagmire of constitutional dilemmas inappropriately assigned as error in the case at bar. It is for this Court to determine only whether the orders of the youth court are supported by statutory authority under Miss. Code Ann. §§ 43-21-101, et seq. (the Youth Court Act) and the case law thereunder.
Id. at 434.
The evidence established that Margaret Steele, formerly employed as the Youth Court Administrator, performed traditional administrative functions and all non-judicial tasks for the Youth Court, under the direction of Judge Johnston. See Miss. Code Ann. § 9-17-3. The current dispute only arose when Steele resigned her position in July of 1993. As Touart candidly admitted, the dispute simply boils down to who has the authority to fill the position formerly held by Steele. Considering Touart's testimony we find:
Q: Mr. Carter  you already knew that Judge Johnston had appointed somebody to fill Ms. Steele's position and you *322 all appointed Mr. Carter to the same position?
MR. TOUART: That's not exactly the way it happened.
Q: Well, that's why we're here, isn't it? Both of you want to put somebody in the same job. We don't need to make light of that, that's what this lawsuit is all about.
MR. TOUART: I agree, that's what it's all about.
In dismissing the complaint, Judge Pigott, in concluding his order opined:
The Court further finds ... that the Jackson County Board of Supervisors have authorized the Youth Court of said county to submit an annual budget for the year ending September 30, 1993, and approved said budget; therefore as provided in the code sections cited above, within the limits of the budget approved by the Board of Supervisors, the Youth Court Judge may employ such persons as provided in the budget from time to time and specifically to employ a Youth Court Administrator to replace Ms. Margarett E. Steele with all of the duties and authority provided in Section 9-17-3.
IT IS THEREFORE ORDERED AND ADJUDGED that the Youth Court of the Youth Court Judge has the lawful and sole authority to appoint and/or employ a Youth Court Administrator as provided for in the budget.

Examining the Youth Court Act, Miss. Code Ann. §§ 43-21-101, et. seq., (Supp. 1979), the following relevant provisions are found:
§ 43-21-103. Construction and purpose.
It is the public policy of this state that the parents of each child shall be primarily responsible for the care, support, education and welfare of such children; however, when it is necessary that a child be removed from the control of such child's parents, the youth court shall secure proper care for such child.
§ 43-21-105. Definitions.
"Designee" means any person that the judge appoints to perform a duty which this chapter requires to be done by the judge or his designee. The judge may not appoint a person who is involved in law enforcement to be his designee.
§ 43-21-119. Youth court personnel.
The judge or his designee shall appoint as provided in section 43-21-123 sufficient personnel, responsible to and under control of the youth court, to carry on the professional, clerical and other work of the youth court. The cost of these persons to appointed by the youth court shall be paid ... out of any available funds budgeted for the youth court by the board of supervisors.
§ 43-21-123. Expenditures by the youth court.
In preparation for said funding, on an annual basis at the time requested, the youth court judge or administrator shall prepare and submit to the board of supervisors, or the municipal governing board of the youth court wherever the youth court is a municipal court, an annual budget which will identify the number, staff position, title and amount of annual or monthly compensation of each position as well as provide for other expenditures necessary to the functioning and operation of the youth court. When the budget of the youth court or youth court judge is approved by the board of supervisors ... then the youth court or youth court judge may employ such persons as provided in the budget from time to time.
§ 43-21-127. Cooperation.
It is hereby made the duty of every public official or department to render all assistance and cooperation within his or its jurisdictional power which may further the objects of this chapter.
§ 43-21-153. Powers of youth court; contempt.
(1) The youth court shall have full power and authority to issue all writs and processes including injunctions necessary to the exercise of jurisdiction and the carrying out the purpose of this chapter.
Further, § 19-9-96 (Supp. 1994) specifically allows the board of supervisors of any county to "set aside, appropriate and expend moneys ... to be used for funding of the operation of *323 the youth court division... ." Payment of salaries to include "court administrators, ... and other professional personnel, secretaries and other clerical or other court-appointed personnel" is specifically authorized.
Next, Miss. Code Ann. § 9-17-1 provides that the office of court administrator may be established at the discretion of the judges and chancellors of the various courts of Mississippi. Section 9-17-3 specifically describes the functions of a court administrator in this state:
It shall be the duty of the court administrator to:
(a) Perform all nonjudicial tasks of the court;
(b) Maintain all statistical reports;
(c) Serve as liaison with the general public and members of the bar;
(d) Coordinate and assist in the duties of the clerks of the courts of the district related to the judicial duties of the clerks;
(e) Provide general administrative support for all judges and chancellors of the district; and
(f) Perform other duties assigned by the judges.
Miss. Code Ann. § 9-17-1, combined with the approval of the Youth Court budget, as mandated by § 43-21-123 and § 19-9-96, clearly authorizes the hiring by the youth court judge of a youth court administrator who performs non-judicial, administrative functions of the youth court. Support for the lower court's finding that Margaret Steele formerly served in the position of Youth Court Administrator, which position Judge Johnston had the authority to fill upon her resignation, is thus found in the statutory scheme of the Youth Court Act, as well as in the overwhelming evidence presented below.
Judge Pigott's second order in this matter, resulting from appellants' Motion for Reconsideration, reiterated that "the Youth Court Judge has the exclusive, sole and only lawful authority to appoint and/or employ a Youth Court Administrator as provided in the budget therefor."
Further, Judge Pigott held that under Miss. Code Ann. § 43-21-109, the Board was authorized to construct and maintain the youth court facilities, but no more. The learned trial judge correctly found there was no statutory provision which allowed "the county board of supervisors, board attorney, county administrator, or any other person to exercise any authority over or interfere with the lawful operation of the Youth Court, juvenile detention center and/or shelter or the appointment and/or employment of the Youth Court Administrator within the budget for the Youth Court adopted by the Board of Supervisors."
Section 43-21-109 specifically provides:
Any county or municipality may separately or jointly establish and maintain detention facilities, shelter facilities, foster homes, or any other facility necessary to carry on the work of the youth court. For said purposes, the county or municipality may acquire necessary land by condemnation, by purchase or donation, may issue bonds as now provided by law for the purpose of purchasing, constructing, remodeling or maintaining such facilities; may expend necessary funds from the general fund to construct and maintain such facilities, and may employ architects.
As the trial court found, no statute expressly provides that the Board is authorized to fill a position entitled, "Youth Court Facilities Administrator." Neither is there such a position found in the youth court budget request presented to the Board for approval.
In sum, there is clear statutory support for Judge Johnston's action in hiring an individual to replace Ms. Steele as Youth Court Administrator. There is no support, however, for Touart's position that in doing so, Judge Johnston exercised executive, rather than judicial authority. By simple analogy, this Court has hired a Court Administrator under the identical statutory authorization granted to Judge Johnston for the Youth Court. See Miss. Code Ann. § 9-17-1. No doubt this Court has not delved into the realm of exercising unconstitutional executive authority in doing so, but has instead recognized the need for an administrator to handle the non-judicial functions of this Court.
*324 Further, § 9-21-1 establishes the Administrative Office of Courts, while § 9-21-3 specifically charges that office "with the duty of assisting the Chief Justice of the Supreme Court of Mississippi with his duties as the chief administrative officer of all courts of this state... ." Continuing the analogy, the Chief Justice of this Court does not impermissibly encroach upon the functions of the executive branch of our state government by supervising the administrative or non-judicial functions of the judicial branch. The same holds true for Judge Johnston in his appointment of a Youth Court Administrator. This is simply a case of a bid for power between the Board and Judge Johnston, in which the Board has produced little support for its position and accordingly, cannot prevail.
This issue was needlessly complicated by the assignment of constitutional questions for review by this Court, disposition of which are not necessary to decide this appeal. On the core question of who has the authority to fill the position of Youth Court Administrator, on which the relevant evidence was presented below, the lower court correctly determined Judge Johnston acted within his statutorily granted authority. This issue is without merit.

II. THE JACKSON COUNTY BOARD OF SUPERVISORS HAS STATUTORY AUTHORITY TO HIRE A YOUTH COURT FACILITIES ADMINISTRATOR.
Appellants cite many code sections, none of which establish or discuss the position of "youth court facilities administrator." Specifically, appellants point to Miss. Code Ann. §§ 43-21-109, 19-2-9 and 19-3-40 as providing the authority for the Board to "hire personnel to administer county youth detention and shelter facilities." Again, § 43-21-109 merely allows the Board to "establish and maintain" the facilities of the youth court, to include construction, remodeling and maintenance. Section 19-2-9 directs the Board to "adopt and maintain a system of county wide personnel administration," which may include formulation of policies on hiring, termination and leave, among others.
Section 19-3-40 provides, in relevant part:
(1) The board of supervisors of any county shall have the power to adopt any orders, resolutions or ordinances with respect to county affairs, property and finances, for which no specific provision has been made by general law and which are not inconsistent with the Mississippi Constitution, the Mississippi Code of 1972, or any other statute or law of the State of Mississippi... .
Appellants construe this section, together with § 43-21-109 as authorizing the Board to create and fill the position of a facilities administrator. Appellants conclude the law "does not vest youth courts with authority to oversee and maintain the non-judicial functions of county facilities, including the juvenile detention and shelter facilities." He asserts the lower court erred in "ruling the Jackson County Board of Supervisors has no authority to hire the youth court facilities administrator."
Appellants are misleading in asserting that Judge Pigott prohibited the Board from hiring a "facilities administrator." In response to the issues and pleadings before him, the judge instead determined the county officials could not interfere in the carrying out of the youth court's non-judicial functions, including the hiring of a Youth Court Administrator, and went on to note there was no statutory support for the Board's position that they could hire a youth court facilities administrator, a second and separate administrator from the court administrator under Judge Johnston's charge. The evidence clearly indicated Steele carried out the functions of a court administrator as that position is defined in § 9-17-3. She clearly was the judge's designee. There was no determination that in carrying out its responsibility to "establish and maintain" the youth court facilities, the Board could not employ and separately fund an individual to assist in such duties, whatever they might include.
Finally, as the Youth Court is charged with the responsibility to "secure proper care" for each child entering its system, the Youth Court Judge is granted the authority to fulfill this function by appointing various persons to "carry on the professional, clerical and other work of the youth court... ." See *325 Miss. Code Ann. § 43-21-119. By these grants of authority, Judge Johnston could appoint youth court referees, special judges, prosecutors, and even persons to function as intake units. With these powers, it appears clear that the youth court judges are placed in charge of the daily operations of their courts, as opposed to the Board's power to establish and maintain court facilities. Judge Pigott's common sense application of the law may have somewhat oversimplified the distinction in finding that while the Board could "keep the roofs from leaking [and] the walls from falling," it could not interfere with Judge Johnston's administration of the court, including his appointment of an administrator to assist him. Nonetheless, the Board's position is unsupported by statutory or case law. There being no statutory authority, the Board would probably be wise to follow the law. This issue is without merit.

CONCLUSION
There is no need for this Court to address the constitutional questions assigned by the appellants since they are not necessary to decide this appeal. Judge Joe Pigott was specially appointed by this Court to consider whether Youth Court Judge Johnston exceeded his powers by hiring a Youth Court Administrator to fill the position created by the resignation of the former Administrator, Margaret Steele. Statutory authority is clearly granted to the Youth Court Judge to fill the position of Administrator, and thus, the lower court's decision that Judge Johnston had the sole authority to hire a Youth Court Administrator was correct.
Further, appellants' argument that there are two, separate administrator positions within the Youth Court system, including a Youth Court Facilities Administrator, is unsupported by the testimony. More importantly, no statute directly contemplates such a position within the Youth Court system. We find no merit to any of appellants' issues.
We affirm.
JUDGMENT AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and PITTMAN, BANKS and JAMES L. ROBERTS, Jr., JJ., concur.
SULLIVAN and McRAE, JJ., not participating.