MILLS, Justice,
for the Court:
¶ 1. This appeal questions the entry by the Chancellor below of an order dismissing the claim of Claud L. Johnson as the illegitimate *820 son and only direct heir of Robert L. Johnson, deceased.
¶ 2. Julia Major and Charles Dodds were married on February 2, 1889. While still married to Charles, but separated from him, Julia gave birth to Robert L. Johnson in Hazlehurst, Mississippi, on May 11, 1911. The father of Robert L. Johnson was one Noah Johnson.
¶ 3. Julia birthed eleven children by Charles (who later assumed the surname of Spencer) before her death in 1949. One of these children was Carrie H. Thompson, half-sister to Robert L. Johnson.
¶4. After Julia’s death, Charles Dodds cum Spencer married Mollie Jackson. This marriage produced Annye Anderson, half-sister ' to Carrie H. Thompson. Annye is unrelated to Robert.
¶ 5. Robert L. Johnson became an accomplished musician, singer and songwriter during his short life. He specialized in that art form now known as “the blues.” In between performances as an itinerant bluesman, Robert occasionally interrupted his ramblings to enjoy marital bliss. Robert first married Virginia Travis on February 17,1929, in Pen-ton, Mississippi. Virginia died in childbirth on April 10, 1930. The child was stillborn.
¶ 6. Robert married Colleta Craft on May 4, 1931, in Hazlehurst, Mississippi. Colleta died without issue'in 1933 or 1934.
¶ 7. The appellant in this case, Claud L. Johnson, was born out of wedlock to Virgie Jane Smith on December 16,1931, in Lincoln County, Mississippi. His birth certificate names R.L. Johnson as his father. Johnson’s occupation is listed as a laborer.
¶ 8. Robert L. Johnson died “outside” of Greenwood, Mississippi, on August 16, 1938, at the age of 27. He recorded 29 songs during his short life. His recordings have greatly influenced modern popular music.
¶ 9. Carrie H. Thompson, one of Robert L. Johnson’s half-siblings, lived in Maryland. She entered into an agreement with Stephen C. LaVere of Memphis, Tennessee, on November 20,1974, whereby she assigned all of her purported rights to copyrights of Johnson’s works, photographs of Johnson and any other materials concerning Johnson she might have to LaVere. In return, LaVere was to pay her fifty percent of all royalties collected by him as a result of his efforts to capitalize on Johnson’s musical and artistic legacy.
¶ 10. On July 17,1981, Annye C. Anderson, of Barrington, Illinois, wrote Carrie H. Thompson, her half-sister, and furnished her a power-of-attorney, prepared by one Mr. Kasilovsky, her attorney, granting Ms. Anderson irrevocable power to act for her in all of her affairs. This power of attorney was executed on July 22, 1981. Ms. Anderson stated that she obtained the power of attorney because “Uh, I was dealing with the Robert Johnson Estate with my sister. And my sister was ill. And she wanted me to handle her affairs.”
¶ 11. The record next contains correspondence from Krasilovsky to Ms. Anderson concerning the estate of Robert L. Johnson, dated August 27, 1982. This letter advised Ms. Anderson to select “... a formal attorney in Mississippi or place of death for opening the estate for official probate purposes.” According to the attorney, “This step is necessary to establish basic title in your sister as administratrix.”
¶ 12. Carrie H. Thompson died testate in Maryland on February 20,1983.
¶ 13. The testatrix appointed Annye C. Anderson as her “personal representative” and devised all of her property, including "... all rights and claims I may have as a result of an agreement dated November 20, 1974 ...” to Ms. Anderson and to the testatrix’s grandson, Robert M. Harris. A copy of the agreement with LaVere was attached to Thompson’s will. The will is accompanied by codicils which appear to conflict with the original intent of the testatrix. (These inconsistencies are matters for the Maryland probate court to interpret.) Within 30 days of the death of Thompson, Annye C. Anderson filed the will and codicils for probate in Maryland.
¶ 14. On June 1, 1989, Annye C. Anderson filed her initial petition to open the estate of Robert L. Johnson in the Chancery Court of Leflore County, Mississippi. She was ap *821 pointed administratrix on June 1, 1989. The notice to creditors was not issued until May 6,1991.
¶ 15. In the interim, Columbia Records released Robert L. Johnson — The Complete Recordings in 1990. These recordings have enjoyed extensive popularity. The inventories and accountings filed by Anderson in 1990 and 1991 state that the estate contained no property or money and that the only assets were “... miscellaneous and unknown.”
¶ 16. Due to objections filed by other parties below, the Chancellor removed Anderson as administratrix and appointed Willis B. Brumfield, Chancery Clerk of Leflore County, as successor administrator on May 28, 1991. On August 29, 1991, the Estate of Robert L. Johnson entered into a contract with Stephen LaVere authorizing him to act as agent for the estate.
¶ 17. Claud L. Johnson, through counsel, filed his formal entry of appearance in the estate on February 19, 1992. He timely responded to a petition to determine heirship filed against him by Brumfield on March 10, 1992.
¶ 18. Finally, on March 23,1992, the statutorily-required summons to unknown heirs was first published.
¶ 19. In his answer to the petition for determination of heirship, Claud alleged that he was the illegitimate son of Robert L. Johnson, deceased, and that he is the sole heir of the deceased. He also alleged that “... the original administratrix’s failure to exercise reasonable diligence to locate him and give him such notice deprived him of due process at law ...” under the constitutions of the United States of America and the State of Mississippi.
¶20. Claud found a stone in his passway when Ms. Anderson filed a Motion to Strike the Affirmative Allegations and Dismiss the Claim of Defendant Claud Johnson. Ms. Anderson hung her hat on Sections 91-1-15 and 91-1-27 to -29 of the Mississippi Code of 1972, arguing that Claud’s claim was barred.
¶21. The Chancellor, on June 22, 1992, entered an order dismissing Claud’s claim as being time-barred under Section 91-1-15(d)(ii) of the Mississippi Code of 1972.

I. ISSUES

¶ 22. Claud raises three issues on appeal:
A. The three-year statue of limitations does not apply to Appellant, as that remedy applies only to those illegitimate children having an estate claim prior to July 1,1981.
B. The original administratrix’s failure to perform her duties should not be allowed to inure to her benefit.
C. The Mississippi Legislature’s intent in amending the language of Section 91-1-15 was to correct and remedy the unconstitutionally disparate treatment given illegitimate and legitimate children, affording to illegitimate children the same rights and opportunities as legitimate children.

II. ANALYSIS

¶23. The record below establishes that Carrie H. Thompson held herself out as “... sister and only known living heir of Robert L. Johnson ...” from at least November 20, 1974, the date of her written agreement with Stephen C. LaVere, until her death in 1983. This agreement further states that:
Mrs. Thompson agrees that LaVere ... is acting upon the representations to the effect that she is the nearest next of kin of Robert L. Johnson, the only other heirs being known being her son and grandson. She understands and agrees that in the event that there are other heirs of Robert L. Johnson who would have a right to the payment of such sums, she shall be responsible for the payment of the same in accordance with their interests in the monies that she has received and shall protect LaVere from any actions, costs or expenses as a result of claims made against such sums.
Mrs. Thompson further agreed that: “... this agreement shall bind the parties hereto, their heirs, personal representatives, and assigns ...”
*822 ¶ 24. Annye C. Anderson assumed her responsibilities under the above agreement by obtaining the power of attorney from Mrs. Thompson on July 22, 1981, granting Ms. Anderson irrevocable power to act for Mrs. Thompson in all of her affairs. Ms. Anderson stated that her purpose for obtaining the power of attorney was because “... I was dealing with the Robert Johnson Estate with my sister.”
¶ 25. In 1977, the United States Supreme Court rendered Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). The Trimble Court struck down an Illinois statute which allowed children born out of-wedlock to inherit by intestate succession only from their mothers, whereas children born in wedlock could inherit by intestate succession from both parents. The U.S. Supreme Court found such statutes to be viola-tive of the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.
¶26. In response to Trimble v. Gordon, the Mississippi Legislature, in 1981, amended Section 91-1-15, Mississippi Code of 1972, to provide for intestate succession among an illegitimate and the natural father with certain limitations. The relevant language to this case in the act states as follows:
A remedy is hereby created in favor of all illegitimates having any claim existing prior to July 1,1981, concerning the estate of an intestate whose death occurred prior to such date by or on behalf of an illegitimate or an alleged illegitimate child to inherit from or through its natural father and any claim by a natural father to inherit from or through an illegitimate child shall be brought within three (3) years from and after July 1, 1981, and such time period shall run notwithstanding the minority of a child.
The remedy created herein is separate, complete and distinct, but cumulative with the remedies afforded illegitimates as provided by the Mississippi Uniform Law on Paternity; provided, however the failure of an illegitimate to seek or obtain relief under the Mississippi Uniform Law on Paternity shall not diminish or abate the remedy created herein.
¶27. The Appellee herein contends that the above statute granted Claud Johnson a window from July 1, 1981, through July 1, 1984, within which to assert his claim as the illegitimate son and only heir of Robert L. ■Johnson, deceased. Assuming for the purposes of this opinion that Ms. Anderson and the Chancellor below have correctly stated the legal effect of Section 91-1-15, we are asked by Claud to look through this window and review the acts of the administratrix and her testatrix which occurred prior to the opening of the estate of the decedent in Mississippi. Simply stated, Claud asks us to determine the effect on his rights of acts of commission and omission undertaken by Mrs. Thompson and Ms. Anderson, in their personal and representative capacities, from 1974 to the present.
¶28. We must first state the law applicable to the facts presented to us. Mississippi has long recognized the doctrine of executorship de son tort. See Hardy v. Thomas, 23 Miss. 544 (1852). This doctrine is generally defined as:
... any intermeddling with the estate of a decedent under a claim of authority, or any act characteristic of the office of a rightful executor or which entices legal control, makes the person doing such act an executor de son tort. Probably the most common form of intermeddling is taking possession of the assets without administration and controlling the property as if the taker were the legal representative.
31 Am.Jur.2d, Executor and Administration, § 36.
¶ 29. An administratrix de son tort is held to the same standard of trust and fiduciary responsibilities as a duly-appointed administratrix or executrix. Under Mississippi law, an administratrix is under a duty to use reasonable diligence to ascertain potential heirs. Smith, By and Through Young v. Estate of King, 501 So.2d 1120 (Miss.1987). An administratrix acts as a fiduciary for all persons interested in the estate. Shepherd v. Townsend, 249 Miss. 383, 392, 162 So.2d 878, 881 (1964).
*823 ¶ 30. Further, in the absence of fraud or mistake, an administratrix or executrix may not take inconsistent positions which could be detrimental to beneficiaries, on the one hand, and beneficial to herself on the other hand. Estate of Ratliff, 395 So.2d 956, 957 (Miss.1981).
¶ 31. We find under the facts of this case that Carrie H. Thompson became an executrix de son tort of the unprobated estate of Robert L. Johnson in 1974, when she entered into the agreement with LaVere. In their agreement she purported to be. the “sister” of Robert L. Johnson and his only surviving heir. She further agreed that she, her personal representative, and assigns were bound to indemnify LaVere in the event that other heirs were later determined to be entitled to the proceeds of the Johnson estate.
¶ 32. Ms. Anderson assumed the status of an executrix de son tort by obtaining the irrevocable power of attorney from Mrs. Thompson and by accepting appointment as the personal representative of Mrs. Thompson’s estate. Ms. Anderson admitted that in 1981, “... I was dealing with the Robert Johnson Estate with my sister.”
¶ 33. The record establishes that Ms. Anderson was generally aware of the duties of an administratrix from 1981 to 1984. In fact, she was advised by counsel in 1982 that she should select “... a formal attorney in Mississippi or place of death for opening the estate for official probate purposes.”
¶34. The record is clear that both Mrs. Thompson and Ms. Anderson held themselves out as representatives of the estate of Robert L. Johnson, particularly during the critical window from 1981 to 1984. Both executrices de son tort took actions with LaVere and other third parties which likely chilled any interest that LaVere or others would have had in coming to Mississippi and locating the rightful heirs. Finally, Ms. Anderson was advised in 1982 by her attorney to take action. This she failed to do.
¶ 35. Having concluded that Ms. Anderson was the executrix de son tort of the estate of Robert L. Johnson as a result of her “in-termeddling” in his estate, should she now be allowed to take under the will of Carrie H. Thompson to the exclusion of illegitimate heirs of the decedent?
¶ 36. In this case, Ms. Anderson, the former administratrix, took a position in the estate of Robert L. Johnson which was beneficial to herself - and detrimental to Claud. Her failure to act to properly open the estate in 1982, while she was acting as administra-trix de son tort, operates as a waiver of the statutory bar against Claud. Our Mississippi courts have long followed the maxim of equity that no person bound to act for another can act for herself. From 1974, until the Chancellor removed Ms. Anderson as admin-istratrix in 1991, Mrs. Thompson and Ms. Anderson were under a duty to act for the rightful heirs of Robert L. Johnson, not for themselves. Thus, under these facts, equity will waive the statutory bar of Section 91 — 1— 15 and open the window to the extent that Claud shall be allowed to prosecute his claim to be the illegitimate son of Robert L. Johnson, deceased, to the same extent as though he had filed his claim between July 1, 1981, and July 1,1984.
¶ 37. We do not address the constitutional issues raised by the Appellant since such a determination is not necessary under the facts of this ease.

III. CONCLUSION

¶ 38. The order entered by the Chancellor below barring the claim of Claud L. Johnson and striking his affirmative allegations is hereby reversed and this matter is hereby remanded to the Chancery Court of Leflore County, Mississippi, for further proceedings consistent with this decision. Touart v. Johnston, 656 So.2d 318, 321 (Miss.1995); Mississippi Public Service Commission v. Mississippi Power & Light, 593 So.2d 997 (Miss.1991).
¶ 39.' REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
DAN LEE, C.J., PRATHER and SULLIVAN, P.JJ., and PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.