# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CT-01230-SCT

*IN THE MATTER OF THE ESTATE OF EZELL*
*"BOGGIE" a/k/a "BOOGIE" THOMAS,*
*DECEASED: SHARON HALEY, JANNIE COLLINS,*
*DERICK THOMAS, ERIC THOMAS, TIMOTHY*
*THOMAS, LYNN VALLIAN, DEZIE HALEY, GAYLE*
*HALEY, DEMETRIA MURRY, JIMMY DALE*
*DIXON, RAY JOSEPH FOUNTAIN, DELANIOUS*
*GRINNELL AND MARION OLIVER*

*v.*

*GLENDA JOYCE THOMAS, ADMINISTRATRIX*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 6/28/2002 |
| TRIAL JUDGE: | HON. GEORGE WARD |
| COURT FROM WHICH APPEALED: | JEFFERSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | KEVIN DWIGHT MUHAMMAD |
| ATTORNEYS FOR APPELLEE: | CHRISTOPHER E. FITZGERALD |
| | ROBERT A. PRITCHARD |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED, AND THE JUDGMENT OF THE CHANCERY COURT OF JEFFERSON COUNTY IS AFFIRMED - 10/14/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Ezell "Boogie" Thomas (Thomas) died intestate in 1997. His estate, which consisted solely of claims for unliquidated damages against R. J. Reynolds Tobacco Company (RJR) and others, was administered in the Jefferson County Chancery Court. In the course of that administration, an adjudication of heirship was required, and the chancellor's final judgment on petition to determine heirs is the subject of the appeal now before this Court.[1] The Court of Appeals reversed and rendered, holding that Thomas's heirs at law are his brother, sisters, mother and descendants of his deceased brother and sister, and not his illegitimate children as found by the trial court. *In re Estate of Thomas*, 881 So.2d 257 (Miss. Ct. App. 2003). This Court granted certiorari to determine if the Court of Appeals erred in its determination.

**FACTS**

¶2.     Ezell "Boogie" Thomas died intestate on August 27, 1997. He was never married. His estate consisted solely of claims for unliquidated damages against R.J. Reynolds Tobacco Co. and others for injuries caused by cigarette smoking. Glenda Joyce Thomas, a sister of the decedent, administratrix of the estate, and petitioner before this Court, instituted estate proceedings on November 10, 1997. The notice to creditors was first published on November 13, 1997. When Ms. Thomas (the administratrix) filed the petition to administer the estate, she listed only one of Thomas's children, Natasha Gail Motley (Natasha), as a surviving heir, as well as Thomas's mother, one brother, four sisters, and a half sister. The petition

---

[1] The suit seeking damages for alleged injuries caused by cigarette smoking, filed by Thomas prior to his death, and the suit filed by the wrongful death beneficiaries, were still pending at the time of this appeal.

2

stated only the cities in which the purported heirs lived and showed Natasha as living in Houston, Texas.[2]

No process was served on the purported heirs.

¶3.    The administration was dormant until August 6, 2001, at which time a petition to distribute $2,200 from the estate was filed by the administratrix, joined by two sisters of the decedent, Elisha Clark and Louise Griffin. There was a signature line for Natasha[3] to join also, but it was not signed. The petition stated that these four were the only remaining heirs at law. The subsequent order dated August 2, 2001, authorizing disbursement of the funds, noted that Natasha "cannot be located" and her share of the funds should be paid into the registry of the chancery court to be held until she could be found. Despite having listed Natasha on the initial petition, and later acknowledging that Thomas had a son, Donnie, the administratrix failed to give notice of the administration of their father's estate to either Natasha or Donnie[4], as Thomas's illegitimate children and thus potential heirs.

¶4.    Because heirship was important in the suit against RJR pending at the time of Thomas's death, RJR moved to have Thomas's sister removed as administratrix and for determination of Thomas's lawful heirs. The chancellor reserved ruling on that motion, but on December 28, 2001, he ordered a determination of

---

[2] In the administratrix's responses to interrogatories filed in the RJR suit in January 1999, she stated that Ezell Thomas's children were Natasha Thomas, Houston, Texas; and Donnie Thomas, Houston, Texas. In a deposition of the administratrix, also taken in connection with the RJR suit, she was asked if she "was aware that Thomas's only heir-at-law is his daughter", to which she responded "yes." When asked if she thought it would be appropriate for her, as administratrix, to notify the heir-at-law (Natasha) of the pending lawsuit, she responded that she was leaving that up to her attorney from Houston and "if anything goes any further than this" he would notify her.

[3] This petition and the subsequent authorization order stated the name as Natasha Gail Mosley, not Motley. Throughout the record, the name most often used is Motley, but there is no doubt that this is one and the same person.

[4] It was later determined that Donnie Thomas was actually Donnie Howard, having been given the surname of his mother, Betty Joyce Howard.

heirs, as requested by RJR, and directed the administratrix to file statutory heirship proceedings within 45 days. He further ordered her to secure valid process on all necessary parties, including any and all illegitimate children of Ezell Thomas. The petition for such determination, filed January 15, 2002, named both Natasha and Donnie as potential heirs, but still noted their residency as only Houston, Texas. However, summonses were issued for Natasha by full address in Houston, and to Donnie, by inclusion in the notice to defendants by publication.

¶5.     Natasha subsequently executed an affidavit declaring that she is the daughter of Ezell Thomas and Willie Marie Motley, asserting her claim to her father's estate, and stating that she believes that the administratrix and/or her sisters knew of her whereabouts and how to contact her. She requested to be present at the heirship hearing but stated that she did not have counsel and was financially unable to make the trip from Houston on such short notice. RJR filed this affidavit on March 11, 2002.

¶6.     The hearing was re-scheduled, and on April 30, 2002, determination of the heirs of Ezell Thomas was begun. The trial court heard testimony from the administratrix Glenda Joyce Thomas; Natasha's mother, Willie Marie Motley; and Natasha. Also present that day were a number of nieces and nephews and several siblings of Ezell Thomas, none represented by counsel. During preliminary inquiry by the chancellor as to who was present and what relation they were to the deceased, he asked if anyone in that group was there to contest the fact that Natasha is an heir. No one responded. He then rephrased his question to say that he interpreted the silence "to mean that nobody is contesting the fact that [Natasha] may be the child of the decedent. Is that right?" Again, no response. The assembled group was also asked if anyone knew the whereabouts of Donnie Thomas. None did. The testimony of the three witnesses clearly supported the fact that Natasha was the daughter of Ezell Thomas. The chancellor took the matter of Natasha's heirship under advisement, scheduled a continuation of the hearing for a later date,

4

and noted that diligent search and inquiry should be made for an address for Donnie, as well summons by publication being issued.

¶7.     Donnie was finally located after diligent and exhaustive search via the internet and was served with process on May 28, 2002.  He was present when court reconvened on June 11 and testified on behalf of his claim to be adjudicated as the son of Ezell Thomas.  Others testifying on his behalf were Donnie's mother, Betty Joyce Howard, and her sister, Jackie.  A number of the blood relatives were also present and represented by counsel, and testimony was given by three nieces and two nephews of the decedent.

¶8.     The chancery court found, upon clear and convincing evidence, that Natasha and Donnie were the sole heirs at law of Ezell Thomas.  The decedent's other relatives appealed, asserting that the statute of limitations had lapsed for the decedent's illegitimate children and that the chancellor erred in finding that Natasha and Donnie were the sole heirs.  The Court of Appeals reversed and rendered, holding that the one-year statute of limitations prohibiting suits to determine heirs cannot be tolled.  Upon our review on certiorari, we disagree and reverse the judgment of the Court of Appeals and reinstate and affirm the chancellor's judgment.

## STANDARD OF REVIEW

¶9.     "An appellate court will not disturb the factual findings of a chancellor unless such findings are manifestly wrong or clearly erroneous." *Estate of Dykes v. Estate of Williams*, 864 So.2d 926, 930 (Miss. 2003).  "If there is substantial evidence to support the chancellor's findings of fact, those findings must be affirmed." *Id.*  On questions of law, this Court reviews the record de novo.  *Miss. Dep't of Transp. v. Johnson*, 873 So.2d 108, 111 (Miss. 2004).

## ANALYSIS

¶10. We are asked to determine whether an affirmative duty exists for the administratrix to provide notice to the potential heirs of an estate, and if so, whether failure to give the potential heirs such notice tolls the 90-day statutory time period.

### 1. Notice

¶11. The statute in question is Mississippi's illegitimate children statute, which provides a limited remedy to illegitimates to enforce substantive rights and claims of intestate succession.

> An illegitimate shall inherit from and through the illegitimate's natural father . . . according to the statutes of descent and distribution if . . . [t]here has been an adjudication of paternity after the death of the intestate, based on clear and convincing evidence . . . . However, no such claim of inheritance shall be recognized unless the action seeking an adjudication of paternity is filed within one (1) year after the death of the intestate or within ninety (90) days after the first publication of notice to creditors to present their claims, whichever is less . . . .

Miss. Code Ann. § 91-1-15(3)(c) (Rev. 2004). The pertinent part of this statute gives illegitimate children the right to inherit from a father who died intestate, so long as paternity has been proven. The sole limitation placed on the illegitimate children seeking inheritance is that their paternity claims must be filed either within one year of the death of the intestate or within 90 days of the first publication of notice. This Court must now determine what, if any, facts and circumstances warrant the tolling of these time limitations.

¶12. Under Mississippi case law, the administratrix of an estate is under a duty to use reasonable diligence to ascertain potential heirs. *Smith ex rel. Young v. Estate of King*, 579 So.2d 1250, 1252 (Miss. 1991). *See also **In re Estate of Johnson***, 705 So.2d 819, 822 (Miss. 1996). Another duty of the administratrix is to provide notice to known or reasonably ascertainable illegitimate children who are potential heirs and whose claims would be barred if the 90-day statutory time period had run. *King*, 579 So.2d at 1253. Under Mississippi law, an administratrix acts as a fiduciary for all persons interested in the estate. *Shepherd v. Townsend*, 249 Miss. 383, 162 So.2d 878, 881 (1964). The administratrix has

6

this duty of notice by statute. Miss. Code Ann. § 91-1-29 (Rev. 2004). In *King*, as here, the administratrix failed to notify the court of a reasonably ascertainable heir and failed to notify the heirs that the paternity claims would be barred if not timely filed.

¶13.    This Court need not specifically define "reasonably ascertainable," because the administratrix did not need to learn whether the decedent had children; she already knew he had children. The administratrix initially listed Natasha Motley as the daughter of the decedent, thus Natasha was clearly ascertainable. Donnie Howard was reasonably ascertainable, as the administratrix could have learned of his existence from Natasha. Further, the administratrix asserted her belief, in the chancery hearing, that Donnie was the son of the decedent and lived in Texas. There was evidence in the record that Thomas had recognized these children as his own, and they knew him to be their father, a fact this Court takes into consideration in such cases. *In re Estate of Patterson*, 798 So.2d 347 (Miss. 2001). The administratrix had an affirmative duty under Mississippi law to notify the decedent's children of the administration of their father's estate. Despite this, the administratrix failed to notify either Natasha or Donnie until long after both the 90-day and the one-year time periods prescribed in Miss. Code Ann. § 91-1-15 had run.

¶14.    This Court has also held that an administratrix may not take positions detrimental to beneficiaries and beneficial to her. *In re Estate of Johnson*, 705 So.2d at 823. Here, there is no evidence of malicious intent on the part of the administratrix, but clearly it would be beneficial to her and detrimental to Natasha and Donnie if they failed to timely establish their claim to their father's estate.

### 2. Tolling

¶15.    This Court has previously ruled that the one-year time limit provision of § 91-1-15 is self-executing, but that the 90-day provision is not. *King*, 579 So.2d at 1254. This Court has also held that the requirement to timely file within 90 days of first publication is not always so strictly required. *Leflore ex*

*rel. Primer v. Coleman*, 521 So.2d 863, 869 (Miss. 1988).  Failure on the part of the administratrix to notify a child of whom the administratrix had actual knowledge can prevent the 90-day statutory bar from being raised against that child.  *Id.*  We must consider which time period under the illegitimate children statute applies to the case at bar.

¶16.     The decedent died intestate on August 8, 1997.  The one-year limitations period under the illegitimate children statute ended on August 8, 1998.  First publication to creditors occurred on November 13, 1997.  The 90-day limitations period under the illegitimate child statute ended on or about February 12, 1998.  Notice of the administration of Thomas's estate was not provided to Natasha and Donnie until 2002.

¶17.     The administratrix contends that the failure to notify the decedent's children within the 90-day period automatically tolls that time period and that, therefore, the one-year period is never triggered.  The siblings, nieces and nephews of the decedent argue that the language of the statute demands that the lesser period be used and that the one-year period would be less here, if the 90-day statute were tolled, and thus the claims of Natasha and Donnie are time barred.

¶18.     The Court of Appeals correctly pointed out that in both *Leflore* and *King* the illegitimates seeking paternity actually did file within the one-year time period, but did not do so within the 90-day time period.  This distinguishing fact, however, is immaterial.  The Court of Appeals' analysis revolved around the one-year time period, which this Court has already ruled as self-executing.  The Court of Appeals correctly stated that the one-year period cannot be tolled, but it incorrectly concluded that because 90 days had elapsed since the first publication that only the one-year period applied.  If the 90-day period had elapsed, this should not result in automatic application of the one-year period.  The statutory language is clear: "[N]o such claim of inheritance shall be recognized unless the action seeking an adjudication of paternity

8

is filed within one (1) year after the death of the intestate *or* within ninety (90) days after the first publication of notice to creditors to present their claims, *whichever is less . . . .*" Miss. Code Ann. § 91-1-15 (emphasis added).

¶19. The statute provides two time periods, only one of which is to be used. Nowhere in the statutory language, nor in Mississippi case law, have we found a provision that stops the tolling of the 90-day period and makes the one-year period apply.

¶20. The legislative intent behind this law was to provide a remedy for illegitimates to inherit from their father, as seen in the accompanying historical and statutory notes to § 91-1-15, the purpose of which was "to provide for intestate succession among an illegitimate and the natural father and his kindred with certain limitations, and to afford unto all illegitimates without classification a remedy whereby they could enforce their substantive rights and claims of intestate succession as provided for . . . ."

¶21. Due process also demands notice be given in such a case. This Court has recognized this principle in *King* where it stated that Mississippi due process law requires notice or diligent efforts to secure actual notice be given. 579 So.2d at 1253-54 (relying on *Caldwell v. Caldwell*, 533 So.2d 413 (Miss. 1988)). In both *King* and *Caldwell*, this Court looked to the United States Supreme Court for authority on the matter in its holding that the Due Process Clause of the Fourteenth Amendment of the United States Constitution requires notice. *Tulsa Professional Collection Servs., Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988).

¶22. Mississippi case law also favors the right of illegitimates to inherit. This Court has stated the recognition "that to deny an illegitimate the right to institute heirship proceedings when the child, of whose existence the administratrix was aware, had no knowledge that the administratrix published notice to creditors is a harsh result which we do not look upon favorably." *King*, 579 So.2d at 1253. This is

exactly what would happen under the decision of the Court of Appeals. That decision would leave Natasha and Donnie completely without remedy to inherit from their father who recognized and loved them and would benefit the administratrix as well as Thomas's other kin who would inherit. Natasha and Donnie, though easily known and ascertainable, were not notified of the administration of their father's estate until long after both time periods had run.

## CONCLUSION

¶23. Until required to do so, the administratrix here simply failed to give any notice of the adjudication of the decedent's estate to the known and reasonably ascertainable illegitimate children, a duty she was required to fulfill under the controlling statute and case law. Case law makes it clear that failure to provide such notice results in a tolling of the 90-day statute. The tolled time period did not become "untolled" to result in use of the self-executing one-year time period. Doing so would punish the decedent's children for something that was no fault of their own, preventing them from inheriting from a man who recognized and loved them, and in this case, benefitting the administratrix, who stands to inherit if the children are excluded.

¶24. We reverse the judgment of the Court of Appeals and reinstate the well-reasoned judgment of the Jefferson County Chancery Court.

¶25. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED, AND THE JUDGMENT OF THE CHANCERY COURT OF JEFFERSON COUNTY IS AFFIRMED.**

**SMITH, C.J., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. WALLER, P.J., DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**