MYERS, P.J., for the Court:
¶ 1. Melvin Sims appeals the Greene County Chancery Court’s final judgment establishing the heirs of Regent Taylor a/k/a Region Taylor (Regent). Melvin avers that the chancery court committed manifest error in determining that he is the lawful heir of Bulah Dantzler Loper and not Carrie Dantzler Sims. Finding no error, we affirm.
FACTS
¶ 2. In 2006, appellee Dorothy Butler filed a petition in the chancery court asking the court to determine the lawful heirs of Regent, a female and a resident of Greene County, Mississippi, who died in 1917. After hearing testimony from witnesses and reviewing thirty-five exhibits entered into evidence, the chancery court issued a judgment establishing heirship. The genealogy outlined therein is lengthy and need not be referred to in detail. We draw from portions of the judgment relevant to the matter before us; additional facts, as necessary, will be related during our analysis.
¶ 3. According to the 1880 census and a copy of the family Bible, Regent had four children, namely, Carrie Taylor, Stark Taylor, Daphne Taylor, and Della Taylor (Della). All four children are now deceased.
¶ 4. Della had seven children, namely, Roy Smith, Sterling Taylor, Carrie Dant-zler Sims (Carrie), Flossie Dantzler Butler (Flossie), Daphne Dantzler Noland, *645 Randall Dantzler, and Bulah Dantzler Loper (Bulah). All seven children are now deceased.
¶ 5. Pertinent to our present purposes, the chancery court found that Della’s daughter, Carrie, had no natural children of her own. The court determined that Carrie’s sister, Bulah, left as her surviving heirs-at-law the following individuals, listed in no particular order: Ollie T. Loper (Ollie), Henry E. Loper, James Williams (James), L.J. Williams (L.J.), Oscar Williams (Oscar), Glenn Williams, and Melvin.
¶ 6. Melvin’s contention in the case was that he is the son of Carrie and, thus, her sole legal heir. In support of his claim, Melvin presented the chancery court a delayed birth certifícate, a social security document, and a school record. The chancery court concluded, however, based on what it found to be clear and convincing evidence, that Melvin was not the son of Carrie, but he was the son of Bulah, his natural mother. The evidence by which the chancery court based its determination was that of witness testimony, a 1930 census showing Melvin to be the nephew of Carrie, and two warranty deeds signed by Melvin acknowledging that he was the son of Bulah and the brother of Ollie, L.J., and Oscar.
¶ 7. Feeling aggrieved, Melvin appeals.
STANDARD OF REVIEW
¶ 8. We will not disturb the factual findings of a chancellor unless such findings are manifestly wrong or clearly erroneous. Estate of Thomas v. Thomas, 883 So.2d 1173, 1176 (¶ 9) (Miss.2004). “If there is substantial evidence to support the chancellor’s findings of fact, those findings must be affirmed.” Id.
ANALYSIS
¶ 9. In the backdrop of this heirship proceeding is a dispute involving sixty acres of land located in Greene County, Mississippi. With Melvin’s assertion that he was the sole legal heir of Carrie, Melvin stood to inherit approximately twelve acres of the land through Carrie, who died intestate. But based on the chancellor’s finding that Carrie died intestate without lawful issue and his finding that Melvin is the natural son of Bulah, who also died intestate, Melvin now stands to inherit a proportionate share of the land through intestate succession as Bulah’s heir-at-law.
¶ 10. Melvin’s argument on appeal is that the chancery court failed to give due weight to the evidence he brought before the court in support of his claim that he was “Carrie’s child.” Melvin asserts that his supporting documents were never contradicted, and his testimony was consistent at trial. Melvin fervently believes the chancery court rested its decision chiefly on the fact that during his testimony he answered in the negative when asked by the chancellor if Carrie had ever told him she was his mother. Melvin submits that “most people never have their mother tell them T am your mother,’ ” and he contends that under such logic, Bulah must not be his mother either, because she too never said to him, “I am your mother.”
¶ 11. The record uniformly refutes each of Melvin’s contentions. With respect to Melvin’s documents, there was nothing for the opposing evidence submitted at trial to remonstrate. This is because the chancellor did not allow any of Melvin’s documents to be admitted into evidence, a detail which the appellant makes no mention of in his brief. The chancellor did not accept the delayed birth certificate, which the record indicates was obtained shortly before this case began, because it was not properly certified as required by Mississip *646 pi Code Annotated section 41-57-9 (Rev. 2009). That section states as follows:
Any copy of the records of birth, sickness or death, when properly certified to by the state registrar of vital statistics, to be a true copy thereof, shall be prima facie evidence in all courts and places of the facts therein stated. A facsimile signature of the registrar shall be sufficient for certification when the certificate shall have impressed thereon the seal of the Mississippi Department of Public Health.
Miss.Code Ann. § 41-57-9. The item brought forth by Melvin not only lacked the proper seal required by section 41-57-9, it merely was a voided copy of a purported certified copy of a delayed birth certificate. The chancellor did not allow Melvin’s other two documents to be admitted for consideration because these items, in violation of the chancery court’s pretrial order, were not disclosed to the opposing parties prior to trial.
¶ 12. As to the assertion on appeal with regard to Melvin’s testimony and the spurious point made along with it, the following portions taken from Melvin’s testimony contravene both:
THE COURT: [Melvin], this is a very important question. You don’t know who your mother was, do you?
Melvin: Sure don’t.
[[Image here]]
Mr. Shiyou: [Melvin], I understand what people have told you, okay. But as we sit here today, who was your mother?
Melvin: Carrie was my mother.
[[Image here]]
Mr. Shiyou: Now, you’ve heard the testimony of other people that, possibly, Bulah was your mother?
Melvin: I heard that, too.
Mr. Shiyou: But did your mother, Carrie, ever tell you that she was not your mother?
Melvin: She never even mentioned it to me.
Mr. Shiyou: Did Bulah ever come to you and say, Melvin, you are my son?
Melvin: Yes.
Mr. Shiyou: She did tell you that?
Melvin: Yes.
Mr. Shiyou: And did she tell you why she gave you over to Carrie?
Melvin: She didn’t tell me that.
Mr. Shiyou: Did you ask her?
Melvin: No, I didn’t ask her.
Mr. Shiyou: Did you believe her?
Melvin: I believed what she said.
THE COURT: When did she do that? When did Bulah say, you know, you’re my son? When did that happen?
Melvin: When did it happen?
THE COURT: Yes. When did she tell you that?
Melvin: I was grown....
THE COURT: Were you out of school?
Melvin: Yea.
¶ 13. In addition to Melvin, the chancellor heard from a number of individuals at trial, none of whom’s testimony lent any support to Melvin’s claim that he was Carrie’s natural child. The record reveals that the chancellor placed considerable reliance on one witness in particular, Juanita Johnson, the daughter of Regent’s deceased daughter, Flossie, and the niece of Carrie and Bulah. Juanita, just shy of her ninetieth birthday when she testified in this matter, provided the chancellor a thorough background of the family’s history with vivid recollections of both hers and Melvin’s childhood, as the documents entered into evidence corroborate. Juanita, who was ten years old at the time Melvin *647 was born, stated that Bulah was Melvin’s natural mother and that Carrie never had any children of her own. Juanita explained that when Melvin was a toddler, Bulah and her husband, who was not Melvin’s father, moved from the “Taylor Land” up to the “Delta.” Bulah left Melvin and his sister, Ollie, with Carrie. Bu-lah eventually moved back to the family community when she became pregnant with James. Juanita said that upon Bu-lah’s return, Ollie went back to live with Bulah, but Melvin stayed with Carrie and remained in her care until he was grown. Others with personal knowledge of the family dynamics also testified that Bulah was Melvin’s natural mother, and they testified that Carrie had no natural children of her own.
¶ 14. The record before this Court adequately supports the chancellor’s conclusion that Melvin was not Carrie’s natural child. Based on the evidence submitted, which we find substantial, Carrie was Melvin’s maternal aunt. She raised Melvin as her own child and provided him the surname of her husband, Joe Sims. But as far as this record is concerned, she did not legally adopt Melvin. Under the laws of descent and distribution of this State, intestate property passes in the manner provided for by Mississippi Code Annotated sections 91-1-3 (Rev.2004) and 91-1-15 (Rev.2004), “unless there has been a statutory adoption of the child claiming the right of inheritance, and in the manner provided for by the adoption statute then in force.” Brassiell v. Brassiell, 228 Miss. 243, 251, 87 So.2d 699, 701 (1956). Mississippi does not recognize adoptions by es-toppel or so-called virtual adoptions with respect to inheritance rights. See id. at 254, 87 So.2d at 702 (“[E]ven though there are some states in which an adoption may be by a written declaration or private contract, with or without the sanction of a court, ... such is not the law in Mississippi”).
¶ 15. Melvin’s claim of error is without merit.
¶ 16. THE JUDGMENT OF THE GREENE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.