# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00346-COA

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF FRANCIS CURRY LEWIS, DECEASED: GENEVA CURRY AND BERNICE CURRY-MALCOLM | APPELLANTS |

v.

| | |
|---|---|
| ANGELA THOMAS, INTERVENOR, AND JIMMIE SMITH | APPELLEES |

| | |
|---|---|
| DATE OF JUDGMENT: | 03/13/2024 |
| TRIAL JUDGE: | HON. WATOSA MARSHALL SANDERS |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CHANCERY COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANTS: | KATHERINE PORTNER McCLELLAN MARY McKAY GRIFFITH |
| ATTORNEYS FOR APPELLEES: | JOHN MARSHALL ALEXANDER STEPHANIE NICOLE MORRIS |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | REVERSED, RENDERED, AND REMANDED - 10/07/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., McDONALD AND LAWRENCE, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     The parties to this appeal sought a determination of the heirs of decedent Francis Curry Lewis after Lewis's nephew, Jimmie Smith, petitioned to open her estate. After a hearing, the Bolivar County Chancery Court adjudicated Lewis's illegitimate grandchildren—Angela Thomas and Deckster Beason—as her only heirs at law. The court also granted Thomas's motion to intervene and to be substituted as administrator of Lewis's estate and awarded Smith his probated claim of $1,800 for fees associated with the opening

of the estate.

¶2. Lewis's nieces, appellants Geneva Curry and Bernice Curry-Malcolm (collectively "Curry"), filed a motion under Mississippi Rule of Civil Procedure 59(e), claiming that the chancery court committed a clear error of law in determining that the grandchildren were Lewis's sole heirs at law. Curry argued that because Thomas's and Beason's natural father, Lewis's son Leedell Bomer, had been deceased for seventeen years prior to Lewis's death, the one-year limitation in Mississippi Code Annotated section 91-1-15(3)(c) (Rev. 2021) for illegitimate children to establish paternity after the death of an intestate (i.e., Thomas's father) barred their claim of heirship. In a final judgment, the chancery court found Curry had waived this argument, and the court adjudicated Thomas as Lewis's sole heir, since Beason had not appeared and asserted any claim as Lewis's heir.

¶3. Curry appeals the chancery court's ruling. We find Curry's arguments meritorious. First, section 91-1-15(3)(c) provides that the one-year limitation for establishing paternity is "self-executing"; so Curry could not have waived this argument, as reasoned by the court. Second, because Thomas did not attempt to establish paternity until almost eighteen years after her putative father's death, she is barred from now asserting a claim of heirship to Lewis.

¶4. Therefore, we reverse and render the chancery court's March 13, 2024 final order denying Curry's Rule 59(e) motion and adjudicating Thomas as Lewis's sole heir at law. Because a summons was issued to all known and unknown heirs to appear and defend at an October 3, 2023 hearing to determine Lewis's heirs, we remand for the chancery court's

2

determination of Lewis's heirs at law based upon the evidence presented at that hearing, but excepting Thomas and Beason from consideration.[1]

### Facts and Procedural History

¶5.    Lewis died intestate on February 23, 2022.  Lewis's husband and her two sons had predeceased her.  One of her sons, Leedell Bomer, had two illegitimate children—Thomas and Beason.[2]  During Lewis's lifetime, she had acknowledged Thomas and Beason as her grandchildren, and she listed them in Bomer's obituary as his children.[3]  Thomas had been assisting Lewis with her medical and financial affairs before Lewis's death.  Thomas is also a named beneficiary on a life insurance policy for Lewis dated February 21, 2011; the policy indicated the relationship to the insured was "Granddaughter."

¶6.    On February 16, 2023, Lewis's nephew, Smith, filed a petition for letters of administration.  The petition acknowledged Thomas and Beason as Bomer's children.  The chancery court signed an "Order Granting Letters of Administration" to Smith and allowed the probate of Lewis's estate.[4]

¶7.    A month later, Thomas filed a motion to intervene, claiming to be "the granddaughter and next of kin of decedent [Lewis]."  Thomas stated in her motion that she currently

---

[1] Curry has not appealed the court's rulings relating to existing estate matters; so those matters are not before us, and we discuss them only the extent necessary for the heirship determination.

[2] Bomer died in 2005.  Lewis's other son, Sam Williams, had no children.

[3] Thomas and Beason were half-siblings with different mothers.

[4] The only assets listed were two tracts of land, one of which contained a mobile home.  Her personal property was noted to be "of nominal monetary value."

"manages the decedent's home and tenants"; so she requested "that she be substituted as Administrator for the Estate upon her taking the oath."

¶8. On March 23, 2023, an attorney for Curry entered an appearance. Curry filed a "Motion to Move Forward with Determination of Heirs" on May 9, 2023, requesting that the chancery court make a determination of heirs at law and "seeking proof" that Thomas and Beason were Bomer's children.

¶9. Smith filed a response to Thomas's motion to intervene and for substitution of administrator on May 25, 2023.[5] Smith did not object to the substitution of administrator, and he asked to be discharged "except that in the unlikely event he is determined to be one of the heirs at law of the deceased, [Lewis], he would claim his rightful share." Curry also filed a response to Thomas's motion to intervene, requesting appointment as co-administrators of the estate if "Smith is allowed to withdraw from that position."

¶10. At a July 24, 2023 hearing, the chancery court ordered Smith to proceed with the petition to determine unknown heirs and the parties to produce proof they are the decedent's heirs at law. A summons by publication for the "known and unknown heirs at law" of Lewis, Bomer, and Williams was issued by the chancery clerk. The summons indicated that the heirs, known and unknown, "are summoned to appear and defend against the Petition filed against you in this action" on October 3, 2023, and that "in case of your failure to appear and

---

[5] Smith opened the estate to protect Lewis's assets (i.e., her mobile home) because the mortgage lender for the mobile home had notified Smith the monthly payments were past due, and the lender had threatened to repossess the home. Lewis purchased the mobile home in 2020. The record shows that Smith made a mortgage payment in September 2023. Smith also testified that he had "paid taxes on that property for 13 years."

4

defend, a judgment will be entered against you for the things demanded in the Petition."[6]

¶11.    On October 3, 2023, the chancery court held a hearing on Curry's motion to determine heirs and Thomas's motion to intervene.  Thomas, Bernice Curry-Malcolm, Geneva Curry, and Smith were all present at the hearing, along with their attorneys.  Bernice and Geneva produced their father's birth certificate, as well as their birth certificates as proof of heirship.  Geneva also noted that an internet search of the 1950 census would show her father and Lewis were siblings.  Geneva further acknowledged that Smith was Lewis's nephew.

¶12.    Thomas testified that she and Beason had traveled as children to Shaw, Mississippi, from Chicago, Illinois, to visit with Lewis and family members.  Thomas provided obituaries from Bomer's and Lewis's funerals.  Lewis had prepared Bomer's obituary and had listed Thomas and Beason as Bomer's children.  In Lewis's obituary, which Thomas had prepared, Thomas and Beason were listed as the grandchildren of the decedent.  Thomas was also a named beneficiary on one of the decedent's life insurance policies.

¶13.    Both Thomas and Smith testified that Thomas assisted Lewis (the decedent) with her affairs prior to her death.  Thomas noted that Bernice called her prior to Lewis's death "to ask me for the land that my grandmother had."  Thomas said she was now making payments on the mobile home, and she currently had a tenant in the home paying $450 monthly in rent.  Thomas did not produce a physical copy of her birth certificate at the hearing, and she admitted on cross-examination that she had not formally established paternity through the court.

---

[6] Proof of publication to the unknown heirs of Lewis, Bomer, and Williams was filed with the court on August 13, 2023.

¶14.  Smith testified that his father was Lewis's brother.  He had heard Lewis "talk about [Thomas and Beason] as her grand-kids."  Smith said that after Lewis's death, Thomas "came down to Mississippi and she cleared out the house and rented the house out or something."  Smith got a call from the mortgage lender "that the account [on the home] was delinquent."  He said Thomas had made a mortgage payment of $500, "but it did not bring the account current."  Smith made a $323 payment just before the hearing "to stop the foreclosure procedures on [the mobile home]."  Smith conceded that if the chancery court determines that Thomas and Beason are Lewis's heirs, "they should get the property."  If not, Smith said he would "stay as the administrator."

¶15.  At the close of the hearing, the chancellor determined, based on the documentation provided, that "the heirs will be" Thomas and Beason.  The chancellor further held that once Thomas demonstrated to the court that "she has caught the house note up" on mortgage payments, she would "consider substituting administrators."  The chancellor concluded that "until the estate is finally closed, this Court has the oversight of the entire estate, everything that's done in it.  And nothing, no money is to be spent without the Court's permission."

¶16.  On October 19, 2023, the chancery court entered an "Order Determining Heirs at Law and Granting Other Relief," finding Thomas and Beason were Lewis's heirs at law.  The court granted Thomas's motion to intervene and substituted Thomas as administrator "upon satisfactory proof of payment(s) bringing the decedent's mobile home current."  The chancery court further ruled in the order:

> 2) Upon substitution of Administrator, Geneva Curry shall be appointed co-administrator;

6

3) At the time of substitution of Administrator, this Court shall outline the duties of each Administrator in an effort to prevent conflict and facilitate efficient administration of the estate;

4) That at the time of substitution of Administrator, Jimmie Smith shall be finally discharged upon turning over any and all necessary information he has gathered and/or possess that will assist in facilitating the administrator of the estate[.]

¶17. On October 23, 2023, Curry filed an amended motion under Rule 59(e) of the Mississippi Rules of Civil Procedure,[7] requesting that the chancery court "alter or amend its judgment that [Thomas] and [Beason] are the sole heirs-at-law of [Lewis]." Curry argued that the court committed a "clear error of law to adjudicate" Thomas and Beason as Lewis's heirs at law because their attempt to adjudicate paternity years after their father's death "is time-barred pursuant to Mississippi Code Annotated Section 91-1-15(3)(c)." Curry also noted that Beason had "failed to appear and defend his heirship" throughout the proceedings.

¶18. The chancery court held a hearing on February 28, 2024. Curry's attorney argued Thomas and Beason were barred from establishing their paternity more than one year after their putative father's death. *See* Miss. Code Ann. § 91-1-15(3)(c). Alternatively, he asserted that Thomas and Beason failed to provide clear and convincing evidence of paternity. Thomas's attorney responded that Curry had waived this argument because statute of limitations is an affirmative defense, and Curry had failed to raise this defense in the pleadings.[8] Upon conclusion of the hearing, the chancery court granted Curry additional time to respond to the arguments raised by opposing counsel. Curry filed a reply in support of

---

[7] The docket indicates Curry had formerly filed a Rule 59(e) motion to alter the judgment on October 13, prior to the court's entry of the October 19 judgment.

[8] Although present at the hearing, Smith did not "take a position either way."

7

the Rule 59(e) motion, arguing that section 91-1-15(3)(c) is a "nonclaim statute," which is not capable of being waived.

¶19. On March 8, 2024, Smith, as administrator, filed a memorandum on Curry's motion to reconsider, asserting "the time is ripe for substitution of administrator to occur in accordance with the [c]ourt's previous order" because mortgage payments were current.[9] Smith alternatively argued that if Thomas and Beason are not Lewis's heirs at law, then "he is an heir at law of decedent and that there are others similarly situated in this large extended family, in addition to [Curry]."[10]

¶20. The chancery court entered a "Final Order on Rule 59(e) Motion to Alter or Amend Judgment" on March 13, 2024. The court denied Curry's Rule 59 motion in part, finding Curry had waived the "affirmative defense" that Lewis's illegitimate grandchildren "were barred by the statute of limitations" in section 91-1-15(3)(c). The chancery court also found Thomas had "met her burden of proof to establish paternity" by clear and convincing evidence. The court granted Curry's motion in part as to Beason's failure to appear; so the court determined that Thomas was Lewis's sole heir at law.[11] Lastly, the chancery court ordered that "all other provisions of the Order Determining Heirs and Granting Other Relief

---

[9] Smith attached a March 2, 2024 mortgage statement showing that no amount was currently due on the mortgage.

[10] Geneva testified at the October 2023 hearing that her father was Lewis's brother, and she had eleven siblings, eight of whom were still living.

[11] No party appeals this ruling. Regardless, as we will discuss in our analysis, Beason is barred from asserting a claim of heirship; so any issue with the court's ruling as to Beason is rendered moot by our holding.

8

remain as previously ordered by this Court."

¶21.    Curry appeals, arguing the chancery court erred (i) in finding Curry "waived a statute of limitations affirmative defense"; (ii) in adjudicating Thomas as Lewis's sole heir; and (iii) in finding Thomas had "presented clear and convincing evidence of paternity."  Curry does not appeal any other rulings from the court's judgments.

¶22.    Smith filed an appellee's brief, taking "no position on determination of the heirs at law of the decedent."  Instead, Smith alternatively asserts that should Curry prevail on appeal, he should remain as the estate's administrator.  Smith requests that we direct the chancery court "to conduct further hearings to broaden the opportunity for other relatives . . . to assert their claims as heirs" of Lewis (e.g., he claims he "is on equal terms with the appellants, who are nieces of [Lewis]").[12]

¶23.    Thomas has not filed a brief.  In *Showers v. Norwood*, 914 So. 2d 758, 761 (¶8) (Miss. Ct. App. 2005), this Court noted that when an appellee does not file a brief, we have two ways to proceed:

> (1) When the record is complicated or of large volume, and the case has been thoroughly briefed by appellant with a clear statement of the facts, and with applicable citations of authorities, so that the brief makes out an apparent case of error, we will not regard ourselves as obliged to look to the record or to search through it to find something by which to avoid the force of appellant's presentation, but will accept appellant's brief as confessed and will reverse. Or (2) when the record is in such condition that we can conveniently examine it, and when upon such an examination we can readily perceive a sound and unmistakable basis or ground upon which the judgment may be safely affirmed, we will take that course and affirm, thereby to that extent disregarding the default of appellee.  But when, taking into view the argument

---

[12] Smith commented at the October 3, 2023 heirship hearing that he had "17 sisters and brothers . . . with birth certificates on them saying Curry on them."

presented by appellant, the basis or grounds of the judgment, and the facts in support of it are not apparent, or are not such that the court could with entire confidence and safety proceed to affirmance, the judgment will be reversed without prejudice.

(Quoting *W.T. Raleigh v. Armstrong*, 165 Miss. 380, 380, 140 So. 527, 527-28 (1932)). Although we cannot say "the record is complicated or of large volume," for the reasons detailed below, we find that the appellants have made "an apparent case of error."

**Jurisdiction**

¶24.    Because Lewis's estate remained open at the time of judgment, we wish to clarify our appellate jurisdiction over this appeal since "[a]n appeal may be taken only from a final judgment" that "adjudicates the merits of the controversy and settles all issues between all parties." *Blaney v. Black Jack Oil Co.*, 325 So. 3d 1204, 1206 (¶8) (Miss. Ct. App. 2021).

¶25.    Curry is appealing the March 13, 2024 judgment and its underlying judgment from October 19, 2023. The court's orders adjudicated all claims the parties asserted in this matter (i.e., the parties' motions requesting a determination of heirs, Thomas's motion to intervene, Smith's probated claim, and Curry's Rule 59(e) motion). Although there are estate matters that remain open and under the chancery court's jurisdiction, Curry is appealing only the court's determination of heirs; the court's other rulings have not been challenged on appeal. *See In re Est. of Pavlou*, 308 So. 3d 1284, 1288 (¶12) (Miss. 2021) ("[A]n order that finally resolves a claim against an estate is final and appealable although the estate remains open."). Under Rule 81(d)(1) of the Mississippi Rules of Civil Procedure, a suit to determine heirs is a separate action. We find that the chancery court's judgment regarding the determination of heirs was final and appealable and that we have jurisdiction over this appeal of the ruling

10

on that issue.

**Standard of Review**

¶26.   Our review of appeals from chancery court is limited.  *Prout v. Williams*, 55 So. 3d 195, 197 (¶8) (Miss. Ct. App. 2011) (citing *Miller v. Pannell*, 815 So. 2d 1117, 1119 (¶9) (Miss. 2002)).  We will not disturb a chancery court's factual findings "unless such findings are manifestly wrong or clearly erroneous."  *Id.* at 197-98 (¶8) (quoting *Est. of Dykes v. Est. of Williams*, 864 So. 2d 926, 930 (¶9) (Miss. 2003)).  "Questions of law are reviewed de novo."  *Id.* at 198 (¶8).

**Discussion**

**I.      Whether the chancery court erred in finding Curry's claim was an affirmative defense that could be waived.**

¶27.   The appellants argue the chancery court's ruling that they waived the claim that Thomas was barred from asserting her paternity was an abuse of discretion because section 91-1-15 is a "'nonclaim statute' . . . not capable of being waived."

¶28.   Curry is correct.  Section 91-1-15(3)(c) provides:

> (3) An illegitimate shall inherit from and through the illegitimate's natural father **and his kindred**, and the natural father of an illegitimate and his kindred shall inherit from and through the illegitimate according to the statutes of descent and distribution if:
>
> . . . .
>
> > (c) There has been an adjudication of paternity after the death of the intestate, based upon clear and convincing evidence, in an heirship proceeding under Sections 91-1-27 and 91-1-29. However, **no such claim of inheritance shall be recognized unless the action seeking an adjudication of paternity is filed within one (1) year after the death of the intestate or within ninety (90) days after the first publication of notice to**

11

**creditors to present their claims, whichever is less**; and such time period shall run notwithstanding the minority of a child. **This one-year limitation shall be self-executing and may not be tolled for any reason, including lack of notice.** If an administrator is appointed for the estate of the intestate and notice to creditors is given, then the limitation period shall be reduced to ninety (90) days after the first publication of notice, if less than one (1) year from the date of the intestate's death; provided actual, written notice is given to all potential illegitimate heirs who could be located with reasonable diligence. No claim of inheritance based on an adjudication of paternity, after death of the intestate, by a court outside the State of Mississippi shall be recognized unless:

> (i) Such court was in the state of residence of the intestate at the time of the intestate's death;
>
> (ii) The action adjudicating paternity was filed within ninety (90) days after the death of the intestate;
>
> (iii) All known heirs were made parties to the action; and
>
> (iv) Paternity or legitimacy was established by clear and convincing evidence.

Miss. Code Ann. § 91-1-15(3)(c) (emphasis added). The Mississippi Supreme Court has also noted that "the provision requiring paternity adjudication within one (1) year from the death of the intestate is self-executing." *Smith ex rel. Young v. Est. of King*, 579 So. 2d 1250, 1254 (Miss. 1991)).[13]

¶29. We therefore agree with Curry that section 91-1-15(3)(c) is a "nonclaim statute" and, as such, is incapable of waiver by any party to this litigation.

---

[13] Although the supreme court designated 91-1-15(3)(c) as a "nonclaim statute" in *King*, the supreme court did make the distinction that "the lesser alternative provision requiring adjudication within ninety (90) days from the first publication of notice to creditors" was not self-executing. *King*, 579 So. 2d at 1253-54.

A "nonclaim statute" is one that creates a right of action and provides a time limit on exercising that right, such as a statute limiting the time to challenge an adoption *or a determination of paternity*; it imposes a condition precedent—the time element that is part of the right of action itself—and *should not be confused with general statutes of limitations* and is not subject to equitable exceptions. While an ordinary statute of limitations may be waived and is subject to equitable tolling, a nonclaim statute is not. A "nonclaim statute" is a self-contained statute that absolutely prohibits the initiation of litigation based on it after a prescribed period. Nonclaim statutes operate to bar untimely claims without any action by the opposing party and deprive a court of the power to adjudicate those claims.

54 C.J.S. *Limitations of Actions* § 32 (updated May 2025) (emphasis added). Accordingly, the chancery court erred in finding Curry had waived this argument as an affirmative defense.[14]

## II. Whether the chancery court erred in finding Thomas was Lewis's sole heir at law.

¶30. As asserted in her Rule 59(e) motion, Curry maintains that section 91-1-15(3)(c) bars Thomas from seeking adjudication of her paternity and establishing herself as Lewis's heir more than eighteen years after her father's death. We find Curry's argument is supported by the law and the record.

¶31. The supreme court held in *Mann v. Buford*, 853 So. 2d 1217, 1220 (¶12) (Miss. 2003), that an illegitimate son's heirship claim was barred by section 91-1-15(3)(c)'s one-year time limit. William Henry Mann, James Mann's putative father, died in September 1981. *Id*. However, James did not file an heirship claim until his father's widow died in 2000, more than eighteen years after his putative father's death. *Id*. The supreme court found the son's

---

[14] Additionally, Rule 81(d) of the Mississippi Rules of Civil Procedure states that an answer is not required in a determination-of-heirship action. *See* M.R.C.P. 81(d)(1) & (4). Therefore, no affirmative defenses have to be raised.

claim was barred because it should have been filed within the time limit established in section 91-1-15. *Id.*

¶32.    Similarly, Thomas did not assert her claim as Bomer's heir until after the death of her grandmother, seventeen years after her putative father's death.  At the October 3, 2023 hearing, Thomas was asked on cross-examination about the establishment of paternity:

> Q.    Okay.  Did you ever have a formal establishment of paternity with Mr. Bomer?
>
> A.    Yes.
>
> Q.    Do you have documentation that shows that?
>
> A.    No.
>
> Q.    Did you go to court and this was done?
>
> A.    For what?
>
> Q.    To formally establish that he was in fact your biological father.
>
> A.    I was born out of wedlock.  That's the only thing I can say.  I was born out of wedlock. They didn't do the right thing.  They wasn't married. He acknowledged us.  His name wasn't on the birth certificate.[15]
>
> Q.    So his name is not on the birth certificate?
>
> A.    His name is not on my birth certificate.
>
> Q.    And you have no legal document showing that he is in fact your father?
>
> A.    No, I don't.

The one-year limitation in section 91-1-15(3)(c) bars Thomas from now asserting that she

---

[15] In 1988, "Danny Thomas," her mother's husband, was later named as Thomas's father on her birth certificate.

is Lewis's heir at law.

¶33. Accordingly, we reverse and render the chancery court's adjudication that Thomas is Lewis's heir. We remand to the chancery court to determine Lewis's heirs at law based on the evidence presented at the October 3, 2023 hearing on the matter, but excluding Thomas and Beason from consideration. Curry's third issue—that the court erred in finding Thomas had not provided clear and convincing evidence of paternity—is rendered moot based on our holding.

### III. Whether issues raised in Smith's appellee brief may be addressed on appeal.

¶34. In his brief, Smith "takes no position on determination of the heirs at law of the decedent," and he does not address any argument the appellants raised. However, Smith does alternatively contend that should Curry prevail on the appeal, he should remain as the estate's administrator. Smith further asserts that the chancery court should "broaden the opportunity for other relatives of decedent Frances Curry Lewis, who are of the same kinship as the appellants, to assert their claims as heirs."[16] Curry responds in her reply brief that Smith may not raise these issues because he has not filed a cross-appeal, nor has he cited relevant

---

[16] Smith has also asked the Court to affirm the chancery court's award of $1,800 in fees. This issue was not challenged on appeal; therefore, we will not address this matter. Furthermore, although the appellants now assert in the reply brief that Bernice should have been awarded the $1,800 because she actually paid the fees, they did not argue this in the primary brief, and our Court "will not consider issues raised for the first time in an appellant's reply brief." *Rogers v. Thames*, 309 So. 3d 1154, 1160 (¶10) (Miss. Ct. App. 2021). "To countenance this would deprive an appellee of the opportunity to respond to the argument." *Id.* (quoting *Carroll v. City of Canton*, 296 So. 3d 751, 760 n.10 (Miss. Ct. App. 2020)).

15

authority in accordance with the Mississippi Rules of Appellate Procedure.[17]  Curry also notes that Smith provided no documentary evidence at the hearing to show that he is an heir at law of the decedent.

¶35.    With respect to Smith's argument that he should remain the administrator, we agree with Curry that Smith was required to file a cross-appeal of that issue. *See Tillmon v. Miss. State Dep't of Health*, 749 So. 2d 1017, 1020 (¶14) (Miss. 1999) (holding an appellee "is not entitled to raise new issues on appeal without filing a cross-appeal").  "In order for the appellee to gain reversal of any part of the decision of a trial court about which the appellant brings no complaint, the appellee is required to file a cross-appeal." *Delta Chem. & Petroleum Inc. v. Citizens Bank of Byhalia*, 790 So. 2d 862, 878 (¶52) (Miss. Ct. App. 2001) (emphasis added).[18]  Concerning Smith's alternative claim that he be considered an heir at law of the decedent, we leave that determination for the chancery court on remand based upon the court's record, as discussed above; however, since all potential heirs were given notice of publication, we reject Smith's contention that the chancery court should "broaden the opportunity" on remand for other potential heirs at law to make their claim.

**Conclusion**

¶36.    Finding the chancery court committed clear error in determining that Thomas was Lewis's sole heir at law, we reverse and render the chancery court's judgment denying Curry's Rule 59(e) motion and amending in part the underlying judgment.  We remand to the

---

[17] *See* M.R.A.P. 28(f).

[18] Further, the court's ruling to substitute the administrator has not been challenged on appeal; so we decline to make any findings on this estate matter.

16

chancery court for proceedings consistent with this opinion to determine the heirs at law of Lewis's estate based upon the court's record, which is not to include Lewis's illegitimate grandchildren based on the statutory time limit in section 91-1-15(3)(c).

¶37. **REVERSED, RENDERED, AND REMANDED.**

**CARLTON AND WILSON, P.JJ., LAWRENCE, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, McCARTY AND LASSITTER ST PÉ, JJ.**

**WESTBROOKS, J., SPECIALLY CONCURRING:**

¶38. I write separately to express my concerns with Mississippi Code Annotated section 91-1-15(3) (Rev. 2021). The laws regarding inheritance for nonmarital natural children are outdated, especially in terms of how we describe these children. For many years children who were born out of wedlock have been referred to as "illegitimate."

¶39. This derogatory term has plagued our society for years, often carrying caste-like undertones that lead to the unequal treatment of children who are not responsible for the circumstances of their birth.[19] The terminology is outdated, offensive, and fails to recognize the modernization of society. In reality, some people choose not to get married for a variety of reasons. And the stigma surrounding single parents or non-married parents does not hold the same negative effects and connotations as it once did. As society evolves, so should our

---

[19] *See Weber v. Aetna Cas. & Sur. Co.*, 406 U.S. 164, 175 (1972) ("The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust.").

17

statutory language that governs the classification of children born into our society and the standards used to adjudicate paternity.

¶40. First, children born out of wedlock should be referred to as "nonmarital natural children." Under Mississippi Code Annotated section 91-1-15(d) "natural parents" is the term used to define the biological mother or father of the "illegitimate child." Since this term already acknowledges the biological relationship of each parent to the child, the term "nonmarital natural child" could effectively replace "illegitimate." This more modern term highlights the relationship between the child and parent without carrying a negative connotation. Other states around the country have also begun changing their language.[20] The term "nonmarital natural child" recognizes that the child is a natural child of a nonmarital parent, resulting in the distinction between "marital natural children" and "nonmarital natural children."

¶41. Next, Mississippi Code Annotated section 91-1-15(3) states:

> (3) An illegitimate shall inherit from and through the illegitimate's natural father and his kindred, and the natural father of an illegitimate and his kindred shall inherit from and through the illegitimate according to the statutes of descent and distribution if:
>
> > (a) The natural parents participated in a marriage ceremony before the birth of the child, even though the marriage was subsequently declared null and void or dissolved by a court; or
> > (b) There has been an adjudication of paternity or legitimacy before the death of the intestate; or

---

[20] *See* Ariz. Rev. Stat. Ann. § 14-2114 (2025) (using the term "natural child"); Ga. Code Ann. § 53-2-3 (2025) (using the term "child out of wedlock"); N.Y. Est. Powers & Trusts Law § 4-1.2 (McKinney) (2021) (using the term "non-marital child"); Tex. Est. Code Ann. § 201.052 (2015) (using the term "biological child"); W. Va. Code Ann. § 42-1-5 (2001) (using the term "non-marital child").

(c) There has been an adjudication of paternity after the death of the intestate, based upon clear and convincing evidence, in an heirship proceeding under Sections 91-1-27 and 91-1-29. However, no such claim of inheritance shall be recognized unless the action seeking an adjudication of paternity is filed within one (1) year after the death of the intestate or within ninety (90) days after the first publication of notice to 11 creditors to present their claims, whichever is less; and such time period shall run notwithstanding the minority of a child. This one-year limitation shall be self-executing and may not be tolled for any reason, including lack of notice. If an administrator is appointed for the estate of the intestate and notice to creditors is given, then the limitation period shall be reduced to ninety (90) days after the first publication of notice, if less than one (1) year from the date of the intestate's death; provided actual, written notice is given to all potential illegitimate heirs who could be located with reasonable diligence. No claim of inheritance based on an adjudication of paternity, after death of the intestate, by a court outside the State of Mississippi shall be recognized unless:

> (i) Such court was in the state of residence of the intestate at the time of the intestate's death;
> (ii) The action adjudicating paternity was filed within ninety (90) days after the death of the intestate;
> (iii) All known heirs were made parties to the action; and
> (iv) Paternity or legitimacy was established by clear and convincing evidence.

Miss. Code Ann. § 91-1-15(3).

¶42. Therefore, under the current state of the law, a nonmarital natural child cannot inherit from a natural grandparent if the child failed to conduct a parental adjudication within one year of the death of that child's natural parent. Nonmarital children should not be denied their inheritance if their natural parent passes away, and those children later seek to inherit from their natural grandparent, who acknowledged and treated them as grandchildren before the grandparent's death. However, our current statutory scheme does not provide an avenue in this type of situation.

¶43. Additionally, I agree with the majority because Mississippi Code Annotated section 91-1-15(3)(c) is controlling. However, I also urge the Legislature to reconsider this statute to comport with modern times and situations where the nonmarital child is known and acknowledged by family members. In the case sub judice, I believe clear and convincing evidence did exist to establish paternity. The appellee, Angela Thomas, contended she was the daughter of Leedell Bomer Jr., the deceased son of her deceased grandmother, Francis Curry-Lewis. Thomas' parents were never married and when Bomer passed away in 2005, he had not legally established his paternity of Thomas, but he had acknowledged her as his daughter. Thomas' stepmother, Martha Bomer, even wrote an affidavit affirming Bomer's paternity. According to the record, Angela grew up near her father and would often visit her grandmother in Mississippi. Thomas' family on her father's side held her out as Bomer's daughter. Upon Bomer's death, Thomas and her brother, Dexter Beason, Bomer's son, were listed in the obituary.

¶44. Additionally, Thomas' grandmother referred to her as her granddaughter. Lewis also listed Thomas as a beneficiary to her life insurance policy with Globe Life Insurance, acknowledging Thomas as her granddaughter. Thomas was also listed as her grandmother's emergency contact, and when Lewis underwent leg amputation, Thomas took a leave of absence from work to take care of her. Upon Lewis' death, Thomas planned her funeral and was listed in her obituary as her granddaughter. Lastly, Thomas also made payments to Lewis' mortgage company and assisted with her financial affairs prior to her death. Here, although Thomas' natural parents were never married, and there was no adjudication of paternity or legitimacy before Bomer's death, all this evidence should have been sufficient

as clear and convincing evidence to establish Bomer's paternity of Thomas even without his name being on her birth certificate. Although the current law states the paternity adjudication is time-barred, the restrictions on her classification should change. In this case, the one-year statute seems unfair and, quite frankly, draconian. I would also strongly urge the Legislature to consider repealing the one-year non-claims statute in favor of enacting a law that provides for more equitable outcomes in circumstances when the familial situation is one where the nonmarital natural child is known and openly acknowledged.

**McDONALD, McCARTY AND LASSITTER ST. PÉ, JJ., JOIN THIS OPINION.**